# SKYLINE ASSEMBLY OF GOD, *Appellant,*
*v.*
# DEPARTMENT OF REVENUE, *Respondent.*

545 P2d 879

*Willard Bodtker,* of Long, Bodtker & Post, Albany, argued the cause and filed a brief for appellant.

*G. F. Bartz,* Assistant Attorney General, Salem,

argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General.

HOWELL, J.

**HOWELL, J.**

Plaintiff contends it is exempt from real property taxes as a religious organization. The defendant contends plaintiff cannot secure the exemption because it failed to file a claim for the exemption with the county assessor. The Tax Court sustained a demurrer to plaintiff's complaint on the ground the complaint failed to state a cause of suit, and plaintiff appeals.

Plaintiff's complaint alleges that it is the owner of certain real property in Linn County, a portion of which is used as a parsonage. Plaintiff admits that the parsonage is taxable but alleges that the balance of the property is used for religious purposes and, therefore, is entitled to an exemption under ORS 307.140. Plaintiff concedes that it failed to file a claim for exemption before April 1, 1974, as required by ORS 307.162, but contends that under ORS 307.163 the county assessor should have notified plaintiff of his intention to assess the property before doing so. The parties have stipulated that plaintiff has never filed a claim for an exemption.

■ The issue on appeal is whether, under ORS 307.163, the county assessor was required to notify plaintiff of his intention to assess its property before levying the assessment, even though plaintiff has never filed for an exemption as required by ORS 307.162. The resolution of this issue will depend upon the interpretation to be given these two statutes. Since the statutes deal with the same subject matter, each must be read in conjunction with the other. *See Clarkson v. Bridge,* 273 Or 68, 539 P2d 1094 (1975); *Kankkonen v. Hendrickson et al,* 232 Or 49, 67, 374 P2d 393, 99 ALR2d 296 (1962).

ORS 307.162 provides:

"Before any exemption from taxation under ORS 307.130 to 307.140, 307.150 or 307.160 is allowed for any year, the institution or organization claiming the exemption shall file with the county assessor, on or before April

1 in such year, a statement verified by the oath or affirmation of the president or other proper officer of the institution or organization, listing all real and personal property claimed to be exempt and showing the purpose for which such property is used. However:

"(1) If the ownership and use of all property included in the statement filed with the county assessor for a prior year remained unchanged, a new statement shall not be required.

"(2) *The time limitation prescribed by this section does not apply in the case of an institution or organization filing a statement pursuant to ORS 307.163.*

"(3) When the property designated in the claim for exemption is acquired after January 1 and before July 1, the claim for that year shall be filed on or before April 1 in such year or within 30 days from the date of acquisition of the property, whichever is the later." (Emphasis added.)

ORS 307.163 provides as follows:

"In the case of property that otherwise would be exempt under ORS 307.130 to 307.140, 307.150 or 307.160, if property taxes are to be assessed on account of the failure of the legal or equitable owner to file the statement required by ORS 307.162, the county assessor first shall notify, by registered or certified mail, the institution or organization owning or purchasing the property of his intention to assess the property for taxation. If the institution or organization files the statement required by ORS 307.162, accompanied by a late filing fee of $10, not later than the 10th day after such notice has been sent to it, according to the records of the county assessor, the property taxes shall be abated. Late filing fees shall be deposited in the general fund of the county for general governmental purposes."

ORS 307.162 requires the taxpayer to file a statement claiming the exemption and outlining the basis therefore "[b]efore any exemption * * * is allowed for any year." However, ORS 307.163 seems to shift the burden of notification by requiring the assessor to notify the owner of property "that otherwise would be exempt [except for a failure to file for an exemption] of

his intention to assess the property" before it can actually be assessed.

■ A determination of the proper interpretation of these statutes in this case requires a recognition of certain basic principles of real property taxation. All real property in this state, except as otherwise provided by law, is subject to assessment and taxation. ORS 307.030. Taxation of property is the rule, and exemptions are the exception. *Corporation of Sisters of Mercy v. Lane Co.,* 123 Or 144, 261 P 694 (1927). Exemptions are matters of legislative grace, and the exemption statutes are to be strictly, but reasonably, construed. *Eman. Luth. Char. Bd. v. Dept. of Rev.,* 263 Or 287, 502 P2d 251 (1972); *Santiam Fish & Game Ass'n v. Tax Com.,* 229 Or 506, 368 P2d 401 (1962).

The exemptions mentioned in the two statutes relate to property owned by literary, benevolent, charitable and scientific institutions (ORS 307.130); fraternal organizations (ORS 307.134 and 307.136); religious organizations (ORS 307.140); crematory associations (ORS 307.150); and public libraries (ORS 307.160). It is interesting to note that each of these statutes provides that the property owner is entitled to an exemption only "upon compliance with ORS 307.162" which requires the claimant to file for an exemption.

Plaintiff, however, contends ORS 307.163 pertains to all exempt taxpayers whether they have previously filed for an exemption or not.

We find that the language of ORS 307.163 is ambiguous, especially when it is read in conjunction with ORS 307.162.[1] Thus, in interpreting this provision we must go beyond the language of the statute in an attempt to discover the probable intent of the legislature.

---

[1] ORS 307.163 was enacted as an amendment to H.B. 1808 in the 1967 special legislative session. ORS 307.162 was amended at the same time as a part of the same bill.

ORS 307.163 is a remedial statute, and, therefore, in attempting to establish its meaning, it may be helpful to consider the problem the legislature sought to remedy. ORS 307.163 was passed as an amendment to House Bill 1808 in the 1967 special session. It contains the same provisions as did H.B. 1356, which was reported out of both the House and Senate Taxation Committees during the regular 1967 session. Apparently, this bill was drafted in response to a problem which was recurring each legislative session: taxpayers would forget to file for an exemption and would be taxed, and then would later appear before the legislature seeking special legislation authorizing a refund of their taxes.[2] House Bill 1356 was designed to obviate this situation, and, as amended, it both authorized refunds of past taxes and attempted to prevent the problem from recurring in the future. The amendments were drafted by the State Tax Commission at the request of the House Taxation Committee.

We agree with the interpretation of ORS 307.163 as expressed by the Tax Court in a previous case dealing with this same issue:

"ORS 307.163 appears to have been drafted as a permanent measure which would always give a *known* religious corporation a second opportunity but, logically, it only has application when the corporation has taken the initial step of making itself known to and accepted by the county assessor as an exempt organization under the provisions of the pertinent statute. It has application when the assessor notes an apparent addition to property or apparent abandonment or change of use, causing him to believe that an amendment of the assessment roll is required. The enactment by the legislature of the tem-

[2] *See* House Taxation Committee Minutes, March 3, 1967, p. 3. *See also Renewal House, Inc. v. Dept. of Rev.,* 5 OTR 638, 643 (1974):

"As a group, exempt corporations are notorious for their failures to protect their tax advantages. It is recognized that in many such organizations, office-holders and board members change frequently and are not business oriented. On a number of occasions, the Oregon Legislative Assembly has enacted special, temporary statutes to protect retroactively the exemption lost by a recognized exempt corporation through failure to meet the statutory requirement to give timely information to the county assessor." (Footnote omitted.)

porary 'second chance' statutes referred to above, capped by the enactment finally of ORS 307.163, dispels any suggestion of the latter's application to a corporation which has not made a record of any color of right to the exemption in the assessor's office." *Renewal House, Inc. v. Dept. of Rev.,* 5 OTR 638, 643-44 (1974).

This interpretation is in accord with the general statutory scheme relating to the method for obtaining particular statutory exemptions—in every case the taxpayer is required to notify the assessor of his claim. For example, ORS 307.330 allows an exemption for commercial facilities under construction upon the filing of proof that the property qualifies (ORS 307.340). Nonprofit homes for the elderly are entitled to an exemption under ORS 307.370 provided they file a written claim on or before April 1 of each year the exemption is claimed (ORS 307.380). The same claim for exemption must be filed by pollution control facilities (ORS 307.420); student housing (ORS 307.460); farm labor camps (ORS 307.495); free port property (ORS 307.830); and farm land not within a farm use zone (ORS 308.375). Even more significant is the statutory procedure provided for in ORS 307.250 and ORS 307.260. These statutes grant tax exemptions to certain war veterans and the widows of veterans upon the filing of a written claim. If the claimant has previously qualified for the exemption but fails to make application for the current year, the assessor is required to give notice to veteran or widow "who secured an exemption" before disallowing the exemption for the current year.[3] (It appears obvious that the legislature did not want a qualified widow who overlooked

_____

[3] *See* ORS 307.260(1)(b): "Not later than April 10 in each year, the county assessor shall notify each veteran or widow of a veteran in his county who secured an exemption under ORS 307.250 for the preceding year but who did not make application therefor on or before April 1 of the current year. Such notice may be given on an unsealed postal card. Any veteran or widow so notified may secure such exemption, if still qualified, by making application therefor to the county assessor not later than May 1 of the current year, accompanied by a late-filing fee of $10 which shall be deposited in the general fund of the county for general governmental expenses. If the claim for any year is not filed within the time specified, the exemption shall not be allowed on the assessment roll of that year."

filing for the current year to lose her veteran's exemption by an oversight without giving her notice.) This procedure closely parallels that adopted in ORS 307.163 for charitable exemptions, and, therefore, it is instructive as to the probable intent of the legislature in connection with that statute as well.

If we were to accept plaintiff's position, it would mean that the owners of property mentioned in the statutes, such as fraternal or religious groups, would not be required to file a claim for exemption; rather, the county assessor would be required to realize somehow that the property held by such groups was being used for benevolent or religious purposes and therefore was qualified for an exemption. Such an interpretation would be inconsistent with the language of both ORS 307.162 and the individual statutes granting the exemptions. It would also place an impossible burden upon the assessor, for it would require him to discover the actual use of all lands in the county. How can the assessor give notice to the property owner when there may be nothing about the title under which property is held to indicate it is held by a religious or fraternal organization? Even if the record owner is a familiar religious group, the property would not qualify for an exemption unless it is used for an exempt purpose. For example, in this case the complaint concedes that the parsonage thereon is taxable but alleges the "major part" of the lot is nontaxable. How is the assessor to know what "major part," or any part, of plaintiff's land is exempt? Moreover, although the property was acquired in December, 1972, there is nothing to indicate when, during the period from 1972 to 1974, the property or a portion thereof became eligible for an exemption.

In this case, no claim for an exemption has *ever* been filed by plaintiff, and, therefore, the assessor had no reason to anticipate that plaintiff "otherwise would be exempt" from the payment of a portion of the taxes on its property.

Affirmed.