# KIM WORRELL
*v.*
# DEPARTMENT OF REVENUE
*Intervenor:*
# THE ARCHDIOCESE OF PORTLAND IN OREGON

Robert S. Willoughby, Yamhill County Legal Counsel, McMinnville, represented plaintiff.

Walter J. Apley, Assistant Attorney General, Salem, represented defendant.

Eugene E. Feltz, Casey, Palmer, Feltz & Sherry, Portland, represented intervenor.

Decision for plaintiff rendered May 9, 1977.

CARLISLE B. ROBERTS, Judge.

Plaintiff, the County Assessor of Yamhill County, appealed from defendant's Order No. VL 76-507, dated August 24, 1976, in which defendant rescinded its Order No. VL 76-441 and overruled plaintiff's denial of property tax exemption for the tax year 1975-1976 with respect to certain real property, owned by the intervenor, designated in plaintiff's records as Yamhill County Tax Lots 3556 P-94 (Sheridan), 4421 BD-7300 and 4421 BD-7400 (McMinnville).

The following facts have been stipulated by the parties:

"1. At all times hereinafter mentioned Intervenor was and now is a nonprofit (eleemosynary) corporation, created and existing under the laws of the State of Oregon for religious, educational, benevolent and charitable purposes.
"* * * * *

"3. At all times hereinafter mentioned, Intervenor was and now is the owner of certain real property in Yamhill County, * * *.

"4. All of said real property was owned by Intervenor and actually and exclusively occupied or used for the

[ 129 ]

advancement of religion, namely providing office space, meeting rooms or housing of religious staff members (priests and nuns) from January 1, 1946 and thereafter through the fiscal year 1975-76.

"5. In 1946, within the time provided by law, Intervenor duly filed a claim for exemption with the Yamhill County Assessor for the said property which was denied by said assessor.

"6. Plaintiff assessed said real property for taxation for the tax year 1975-76 on the grounds that although said property was otherwise entitled to exemption for said year under ORS 307.130, said exemption could not be granted because a new claim for exemption had not been timely filed for said year pursuant to ORS 307.162.

"7. Intervenor did not file a new claim for exemption pursuant to ORS 307.162 for said property for the tax year 1975-1976.

"8. Prior to the assessment of said property for taxation for the tax year 1975-1976, Plaintiff did not notify Intervenor, by registered or certified mail, of his intention to assess said property for taxation for said tax year. However, annual tax statements were mailed to, and received by Plaintiff [sic], together with notices of any increases in value, during the period 1946 through 1975. All taxes have been paid by Plaintiff [sic]. [Read "Intervenor" for "Plaintiff" in last two sentences.]

"9. Intervenor duly appealed to the Department of Revenue of the State of Oregon from the action of Plaintiff in assessing Intervenor's property for taxation for the tax year 1975-76. A hearing, pursuant to ORS 306.537, was held on December 19, 1975 and thereafter, under the date of August 24, 1976, the Department of Revenue of the State of Oregon issued its written opinion in which it allowed the petition of Intervenor, rescinding and superseding Opinion and Order No. VL 76-441."

The issues raised by the parties to this action involve the interpretation and application of ORS 307.130, 307.162, and 307.163 (1975 Replacement Part)[1] to the facts presented.

------

[1] ORS 307.130 provides in part:

"Upon compliance with ORS 307.162, the following property owned

Prior to the decision of *Archdiocese of Portland v. Dept. of Rev.,* 5 OTR 111 (1972), *aff'd,* 266 Or 419, 513 P2d 1137 (1973), religious organizations in Oregon were not deemed charitable corporations within the purview of ORS 307.130. They were allowed property tax exemptions for real property owned and used by them for public worship and for entertainment and recreational purposes, under the provisions of ORS 307.140. It was held in the *Archdiocese* decision that

or being purchased by incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:

"(1) Except as provided in ORS 748.545, only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions."

ORS 307.162 provides:

"Before any exemption from taxation under ORS 307.130 to 307.140, 307.150 or 307.160 is allowed for any year, the institution or organization claiming the exemption shall file with the county assessor, on or before April 1 in such year, a statement verified by the oath or affirmation of the president or other proper officer of the institution or organization, listing all real and personal property claimed to be exempt and showing the purpose for which such property is used. However:

"(1) If the ownership and use of all property included in the statement filed with the county assessor for a prior year remained unchanged, a new statement shall not be required.

"(2) The time limitation prescribed by this section does not apply in the case of an institution or organization filing a statement pursuant to ORS 307.163.

"(3) When the property designated in the claim for exemption is acquired after January 1 and before July 1, the claim for that year shall be filed on or before April 1 in such year or within 30 days from the date of acquisition of the property, whichever is the later."

ORS 307.163 provides:

"In the case of property that otherwise would be exempt under ORS 307.130 to 307.140, 307.150 or 307.160, if property taxes are to be assessed on account of the failure of the legal or equitable owner to file the statement required by ORS 307.162, the county assessor first shall notify, by registered or certified mail, the institution or organization owning or purchasing the property of his intention to assess the property for taxation. If the institution or organization files the statement required by ORS 307.162, accompanied by a late filing fee of $10, not later than the 10th day after such notice has been sent to it, according to the records of the county assessor, the property taxes shall be abated. Late filing fees shall be deposited in the general fund of the county for general governmental purposes."

the advancement of religion is a charitable purpose, thus enabling religious organizations to claim exemption under the provisions of ORS 307.130 for real property owned and used by them in the advancement of religion. (ORS 307.140 was amended by Or Laws 1973, ch 397, § 1, to reflect the judicial decision.)

Intervenor urges this court to affirm the order of defendant which granted exemption of the subject property from taxation for the 1975-1976 tax year, as property owned by a charitable corporation and used in its charitable work.

Intervenor did not file a timely application for exemption in 1975 but relies on its 1946 filing which was approved in part by the assessor in 1946 (in conformity with ORS 307.140, as then interpreted), but was denied with respect to the subject property.

Intervenor bases its case upon the theory that the assessor is required to take notice of judicial decisions affecting the application of the exemption laws and, therefore, the assessor is bound to take the initiative in reviewing prior applications for exemption which had been denied, to determine whether any of them should have been granted in light of the subsequent judicial interpretations. In addition, intervenor claims that ORS 307.163 requires the assessor to notify an organization of its right to claim an exemption under these circumstances.

ORS 307.163 has been the subject of judicial interpretation on two occasions. In *Renewal House, Inc. v. Dept. of Rev.,* 5 OTR 638 (1974), this court held that a corporation formed exclusively for charitable, religious and educational purposes must take the initial step of "making itself known to and accepted by the county assessor" under an appropriate exemption statute before the provisions of ORS 307.163 will require the assessor to notify such an organization that it has a claim for exemption. In *Skyline Assembly v. Dept. of Rev.,* 274 Or 259, 545 P2d 879 (1976), the Supreme

Court agreed with the interpretation of ORS 307.163 stated in *Renewal House, Inc., supra,* and applied it to a religious organization seeking exemption under ORS 307.140. The decision in *Skyline Assembly* requires an initial filing of a claim for exemption before a county assessor has a statutory duty to send a notice pursuant to ORS 307.163.

Intervenor has argued in support of its contentions that the facts of this case are distinguishable from those present in *Renewal House, Inc.* and *Skyline Assembly,* contending that it has made itself known to the assessor as a religious organization in compliance with the minimum requirements stated in *Renewal House, Inc.,* and that plaintiff-assessor should have known that the subject property was entitled to exemption after the decision in *Archdiocese of Portland, supra.*[2] The intervenor further argues that ORS 307.163 should not be read to require a reapplication for exemption of property that was improperly denied exempt status in a prior year. It points out the provision of ORS 307.162 which removes the requirement for filing if the ownership and use of property included in a previously filed statement remain unchanged.

In brief, it is the intervenor's position that the plaintiff-assessor should have notified it of his intention to assess the subject property for the tax year 1975-1976 prior to the inclusion of the property on the tax rolls for that year. Because of the plaintiff-assessor's failure to give this notice, intervenor claims the right to file its application for exemption accompanied by a late filing fee and thus become entitled to exemption for the tax year 1975-1976.

The plaintiff-assessor argues that the intervenor has failed to protect its claim for exemption from property taxation by its acquiescence in the assess-

---

[2]The court notes that intervenor was the plaintiff in that case and as such had knowledge of its eligibility for such an exemption once the decision was rendered.

ment and taxation of the property for 30 years. Upon the denial of the original claim for exemption filed in 1946, intervenor did not appeal, it made no objection to the annual assessment of the property and it regularly paid the taxes until the 1975-1976 tax year. Plaintiff-assessor argues that he had no way of knowing what use was made of the subject property for the tax year 1975-1976 and contends that the situation in which an application for a property tax exemption has been denied is the same as that in which no application has ever been filed. In effect, when the intervenor's application in 1946 was fully acted upon in that year, it was exhausted.

The plaintiff-assessor also points out that intervenor's interpretation of ORS 307.163 would require the assessor to review the use of all property owned by qualified organizations each tax year in order to determine whether notice under ORS 307.163 should be given. Plaintiff-assessor submits that placing this burden on the assessor is inconsistent with the statutory scheme for exemption of property from taxation, and would create substantial administrative burdens not contemplated by the legislature.

[1, 2, 3.] When ascertaining the legislative intent for a particular statute, other statutes *in pari materia* must be considered. *Clarkston v. Bridge,* 273 Or 68, 539 P2d 1094 (1975); *Kankkonen v. Hendrickson et al,* 232 Or 49, 374 P2d 393 (1962). All property is deemed subject to taxation except as specifically exempted by law. *Corporation of Sisters of Mercy v. Lane Co.,* 123 Or 144, 261 P 694 (1927); ORS 307.030. An exception to this rule is made for property owned and used by a charitable organization for a qualified purpose. ORS 307.130. However, this exception does not operate until a statement of ownership and use, showing eligibility for exemption as required by ORS 307.162, is filed with the assessor. ORS 307.162 requires such a filing for any year before exemption will be allowed but, once allowed, additional statements are not required if the ownership and use of the property

included in a previously filed statement remain unchanged. Finally, ORS 307.163 provides for notification by the assessor (who has had notice as required by *Skyline Assembly, supra*), to the owner of property which would be exempt from taxation if a filing had been made, stating his intention to assess the property for lack of an application.

As the Supreme Court stated in *Skyline Assembly, supra,* 76 Adv Sh at 263:

"* * * [T]he language of ORS 307.163 is ambiguous, especially when it is read in conjunction with ORS 307.162. * * *"

In that case, the Supreme Court approved this court's interpretation of ORS 307.163 expressed in *Renewal House, supra,* 5 OTR at 643-644:

"ORS 307.163 appears to have been drafted as a permanent measure which would always give a *known* religious corporation a second opportunity but, logically, it only has application when the corporation has taken the initial step of making itself known to and accepted by the county assessor as an exempt organization under the provisions of the pertinent statute. It has application when the assessor notes an apparent addition to property or apparent abandonment or change of use, causing him to believe that an amendment of the assessment roll is required. The enactment by the legislature of the temporary 'second chance' statutes referred to above, capped by the enactment finally of ORS 307.163, dispels any suggestion of the latter's application to a corporation which has not made a record of any color of right to exemption in the assessor's office."

The court determined that the procedure outlined in ORS 307.260 (exemption for war veterans and widows of war veterans), requiring notification of a taxpayer who had failed to file for exemption, closely parallels that contained in ORS 307.163. In cases arising under ORS 307.260, notice is to be given to veterans or widows "who secured an exemption" for the preceding year before disallowing an exemption for the current year because of failure of the taxpayer to file. This procedure indicated to the court that the legislature

expected and intended a religious or charitable organization to secure exemption in a prior year before the assessor would be required to send notice in a succeeding year of its failure to file pursuant to ORS 307.163.

■■ Under the provisions of ORS 307.130, it is not the charitable or religious organization which is exempt from property taxation, but only its qualifying real or personal property. Not all property owned by a charitable or religious organization qualifies for exemption from taxation. The property must be used for the purposes described in ORS 307.130 or 307.140. This is a distinction intervenor has failed to consider fully in presenting its argument to this court. The use of the property, which is determinative of its eligibility for exemption, is under the control of and known to the charitable or religious organization but not necessarily to the assessor. Analysis of ORS 307.162, with this in mind, leads to the conclusion that subsection (1) of that statute, which removes the requirement of filing "[i]f the ownership and use of all property included in the statement filed * * * for a prior year remained unchanged, * * *" applies only to that part of the property which received exemption in the preceding year, and not to property which, although included in the statement, was denied exemption in a prior year.

■ If intervenor had appealed from the assessor's denial of its application for exemption made in 1946, and that denial had been overruled, the defendant's order of exemption, filed at the time, would have established the record of exemption for the subject property. However, intervenor waived its right to contest the validity of that decision by its failure to appeal in a timely manner. *Sisters of Charity v. Wash. Cty. Com.,* 3 OTR 106 (1967).

This situation is similar to that presented in *Marriott v. Dept. of Revenue,* 4 OTR 508 (1971), where plaintiffs' application for farm use assessment for the tax year 1968-1969 was denied by the assessor and was

not appealed. In the next year, the plaintiffs did not apply for farm use assessment but complained that they had not received notification from the assessor of their failure to file pursuant to ORS 308.375(4) (repealed by Or Laws 1971, ch 629, § 2), a notification procedure similar to ORS 307.260 and that present in the case at bar. Plaintiffs in that case had claimed that their application for farm use assessment for the 1968-1969 tax year should have been approved and that, consequently, they were excused from reapplying for a special farm use assessment in 1969-1970. This court held that the plaintiffs were not entitled to notice of their failure to file. Their 1968-1969 application had been denied by the assessor, they had not secured special assessment in the prior year and, therefore, they were not entitled to notice under the statute.

■■ Under the rule established in the *Skyline Assembly* and *Renewal House, Inc.* cases, an organization which has not previously filed an application for exemption is not entitled to the notice of intent to assess required by ORS 307.163. This court now holds that the assessor must notify the owner of property which would otherwise be exempt under ORS 307.130 to 307.140, 307.150, or 307.160 of his intent to assess property taxes against such property only when (1) the property was treated as exempt in the immediately preceding year and (2) the assessor contemplates assessment of the property in the current year because of a change of ownership or use of that property for which no application for exemption has been made.

Defendant's Order No. VL 76-507, dated August 24, 1976, is set aside and held for naught and the county assessor and the tax collector of Yamhill County shall amend the assessment and tax rolls for 1975-1976 with respect to the subject property as necessary to conform with this decision.