# IN THE OREGON TAX COURT

## MULTNOMAH KENNEL CLUB
*v.*
## DEPARTMENT OF REVENUE
(TC 1467)

Robert F. Blackmore, Thompson, Adams & DeBast, Portland, represented plaintiff.

G. F. Bartz, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered July 8, 1982.

## CARLISLE B. ROBERTS, Judge.

Plaintiff appeals from defendant's denial of a claim for exemption from the Multnomah County Business Income Tax (Multnomah County Ordinance No. 121, as amended by Ordinance No. 131) for the calendar years 1976 and 1977. In its Order No. MBI 80-1, dated November 6, 1980, defendant affirmed a disallowance of exemption from taxation made by the Audit Division of the Department of Revenue and denied a refund of taxes allegedly overpaid. There is no serious dispute as to the facts and the case was submitted upon briefs.

Multnomah Kennel Club owns and operates a track for greyhound racing within Multnomah County. The club is licensed to conduct pari-mutuel wagering race meets and, pursuant to Oregon Revised Statutes chapter 462, pays a percentage of its gross mutuel wagering receipts to the Oregon Racing Commission.

Multnomah County taxes all businesses within the county (including the plaintiff) at a rate of .6 percent of net income. Plaintiff challenges the imposition of the tax, arguing that the county is without authority to levy such a tax, and

even if it could do so, plaintiff is exempt from taxation by way of ORS 462.100.

*County's Authority to Tax.* Multnomah County became a "home rule" county in 1966. Pursuant to the Oregon Constitution, art VI, § 10, the county adopted a charter which granted it authority over "matters of county concern," "to the fullest extent allowed by the Constitution and laws of the United States and the State of Oregon, as fully as though each particular power conveyed in that general authority were specifically listed * * *."

The Multnomah County Business Income Tax was enacted in April 1976 as Multnomah County Ordinance No. 121. It was in full force during the tax years in question.

■ A classic exposition of the powers of a municipal government is found in 1 Dillon, *Municipal Corp.* § 237, at 448-450 (5th ed 1911). A municipality is entitled to exercise only those powers expressly granted, those necessarily or fairly implied or incidental to the powers expressly granted, or those necessary to the accomplishment of the declared object and purpose of the governmental unit. This same catalog of powers was adopted by the Oregon Supreme Court in *City of Corvallis v. Carlisle,* 10 Or 139, 141 (1882).

■ Plaintiff asserts that an authorization to tax must be evident and unmistakable and the fact that the Oregon Constitution does not expressly confer upon the counties a power to impose an income tax indicates an intent to reserve such a power to the state. (Plaintiff recognizes that this issue apparently is one of first impression in Oregon. (Pl Br, at 10.) This court agrees that not enough cases have been handed down in Oregon, distinguishing the matter of "local" versus "state" concern, to facilitate a solid decision.)

One need only glance at the section headings of Article XI of the Oregon Constitution to discover that it places numerous limitations upon the powers of local government. In fact, all of Article XI, § 11, is devoted to property "tax limitations." There is no similar provision as to county income taxation.

Although neither the state Constitution nor the Multnomah County Charter explicitly confer upon Multnomah County a power to tax income, the existence of an

implied power by municipalities to tax has been acknowledged in Oregon:

> "It is universally recognized that municipal corporations created to provide general governmental services have the power to impose taxes and to select the kind of tax that the governing body of the city considers the most appropriate. * * *" *Horner's Market v. Tri-County Trans.,* 256 Or 124, 131, 471 P2d 798, 801 (1970), overruled on other grounds, *Mult. County v. Mittleman,* 275 Or 545, 552 P2d 247 (1976).

While the *Horner* case was concerned with the power of a city to levy taxes, the court is convinced that, under the present state of the law, the same rule logically applies to home rule counties. Their needs for revenue are the same as the cities' needs. *Dept. of Rev. v. Co. of Multnomah,* 4 OTR 133, 140 (1970); *see also* Etter, *County Home Rule in Oregon,* 46 Or L Rev 252, at 264-265.

■     Plaintiff asserts that a business income tax is not a matter of "county concern" and is thus beyond the home rule grant of the Oregon Constitution and the county charter. The court has examined with care each authority cited by the plaintiff and is not persuaded. As the plaintiff has stated, "It is well established that home rule would be an empty power if not coupled with the power of taxation." (Pl Br, at 11.) It is difficult to see how the imposition of taxes could not also be a matter of "county concern." The cases and other authorities cited by plaintiff do not support plaintiff's negative conclusion. Since the Multnomah County Charter extends the county's powers to the limits of "the Constitution and laws of the United States and the State of Oregon," this necessarily includes the power to levy taxes. And since the Multnomah County Charter makes no express limitation as to the type of tax which can be levied, the county has, in a sense, reserved to itself the choice of the subject of its taxing power. *Cf* Kehrli & Mattius, *The Authority of Home Rule Cities and Counties in Oregon to Levy Sales and Income Taxes—An Affirmative View,* 5 Will LJ 183, 189-192 (1969).

However, the best authority the court can find to support its conclusion is in ORS 305.620 and 305.630. The legislature has tacitly recognized that counties have a power to impose income taxes, specifically in ORS 305.620(1), which governs the collection and distribution of local taxes imposed

on *income* and *sales*. ORS 305.630 and 305.635 require the head of an agency or department of the State of Oregon to comply with the requirements of a city or county tax in the case of employees who are subject to such a tax and to "withhold" tax. "Withholding" of taxes is commonly associated with income taxes.

For the above reasons, the court finds that the Oregon Constitution and the Multnomah County Charter grant the County of Multnomah authority to levy an income tax upon businesses of the county, including the income of the plaintiff.

■ *Exemption by Preemption.* Section 8 of the Multnomah County Ordinance No. 121 is a list of income-earning activities which are exempt from the Multnomah County Business Income Tax. Pari-mutuel wagering is not included among them. Exemption statutes are to be strictly construed. *Skyline Assembly of God v. Dept. of Rev.,* 274 Or 259, 545 P2d 879 (1976). The absence of an explicit exemption would ordinarily be fatal to plaintiff's case. However, the plaintiff has presented a question of statutory interpretation which must be resolved.

ORS chapter 462 governs state licensing of race meets. ORS 462.067 provides for greyhound racing. It states that:

"All licensees of race meets except those subject to ORS 462.057 and 462.062 shall make payments as follows:

"(1)   License fee - $100 per racing day, payable to the commission.

"(2)   Percentage of gross mutuel wagering payable to the commission * * *."

■ ORS 462.100 provides that the license fees and taxes imposed under chapter 462 "* * * shall be in lieu of all other *licenses and privilege taxes* or charges by the state or any county, city or other municipal corporation *for the privilege of conducting the race meet * * *.*" (Emphasis supplied.) The plaintiff charges that the state legislature has preempted, through chapter 462, any form of local income taxation of pari-mutuel wagering establishments.[1]

---

[1] It is noted that plaintiff does not challenge the imposition of income taxes upon the plaintiff pursuant to ORS chapter 318.

Note that ORS 462.100 only limits the county's power to impose "licenses and privilege taxes," "for the privilege of conducting the race meet * * *." The Multnomah County Business Income Tax is a tax imposed upon plaintiff's business income. Payment of the tax is in no way connected with the privilege of conducting a race meet. The tax is imposed upon most types of business income and is not limited to wagering receipts. While it may be argued that the ultimate objectives of the two taxes are identical (i.e., the raising of revenue), they are imposed upon distinct functions. If, in the years in question, plaintiff had conducted race meets without realizing a penny of wagering income but had earned income from other sources, the county's tax would be imposed. The percentage tax of ORS 462.067 would not be imposed.

The stated purpose of the Multnomah County Business Income Tax is the raising of revenue. Section 3 of the ordinance directs that:

"B. * * * The tax prescribed herein is for revenue purposes and is not imposed for regulatory purposes. The payment of a tax required hereunder and the acceptance of such tax by the county shall not entitle a taxpayer to carry on any business not in compliance with all other legal requirements."

The court agrees with plaintiff's strong argument that a privilege tax of the type prohibited by ORS 462.100 may be imposed not only for police purposes but also for the purpose of raising revenue (the stated purpose of the Multnomah County Business Income Tax). However, the words describing the ORS chapter 462 tax ("The license fee *and tax * * * for the privilege of conducting the race meet * * *"*) [emphasis supplied] are regulatory by definition and are different from a tax imposed *solely* for revenue purposes. *See Ingels v. Riley,* 5 Cal2d 154, 159, 53 P2d 939, 941-942 (1936).

■    A long-established rule dictates that the state is deemed to have exercised its power to preempt a field only where the intent to do so is apparent. *LaGrande/Astoria v. PERB,* 281 Or 137, 148-149, 576 P2d 1204, 1211 (1978). Had the legislature intended to preempt the income taxation of pari-mutuel racing establishments, it could and should have given explicit direction to that effect.

■ ■    When considering potentially conflicting statutory

provisions, courts have expressed a policy favoring enactments of local government.

> "* * * [T]he closer those who make and execute the laws are to the citizens they represent the better are those citizens represented and governed in accordance with democratic ideals. That objective would not be served if we should decide that the legislative assembly preempts the field each time it makes a statute applicable to all cities alike." *State ex rel Heinig v. Milwaukie et al,* 231 Or 473, 481-482, 373 P2d 680, 685 (1962).

A court must choose, if possible, to interpret state and local laws so as to avoid inconsistency:

> "* * * It is reasonable to interpret local enactments, if possible, to be intended to function consistently with state laws, and equally reasonable to assume that the legislature does not mean to displace local civil or administrative regulation of local conditions by a statewide law unless that intention is apparent. * * *" *LaGrande/Astoria v. PERB, supra,* at 148-149.

None of the arguments raised by plaintiff convince the court that Multnomah County Ordinance No. 121 is inconsistent with the taxing objectives of ORS chapter 462.

The defendant's Order No. MBI 80-1 is affirmed. Defendant is entitled to its statutory costs and disbursements.