## KEETER MANUFACTURING, INC.
*v.*
## DEPARTMENT OF REVENUE
(TC 3445)

Brett R. Chytraus, Weatherford, Thompson, Quick & Ashenfelter, P.C., Albany, represented plaintiff.

James J. McLaughlin, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for plaintiff rendered July 19, 1994.

## CARL N. BYERS, Judge.

This matter is before the court on cross motions for summary judgment. At issue is the interpretation of the Oregon Enterprise Zone Act. The specific question is whether property becomes disqualified for enterprise zone tax exemption by virtue of being sold.

The legislature enacted the Oregon Enterprise Zone Act in 1985 to encourage businesses to locate in economically lagging areas.[1] ORS 284.130. One of the benefits provided was a limited property tax exemption. The exemption was for a five-year period. The property was 100 percent exempt the first year, 80 percent the second year, and so on, decreasing by 20 percent each year. ORS 284.210. If either the business or the property became disqualified, the property became taxable for the year following disqualification, and the exempted taxes for the prior years were forgiven.

In 1989, the legislature amended the Oregon Enterprise Zone Act. The amendment shortened the exemption period to three years, but exempted the property 100 percent. Also, upon disqualification, 100 percent of the taxes previously exempted were to be recaptured.

### FACTS

The material facts are not disputed. In 1989, Automotive Parts Exchange, an Oregon corporation, applied for and received an enterprise zone property tax exemption beginning with the 1989-90 tax year. This company later changed its name to Keeter Manufacturing, Inc. (Old Keeter). The sole shareholders of the corporation were Jimmie and Marilyn Keeter.

In July 1990, Old Keeter sold its assets to Pentadyne Technologies, Inc. (New Keeter), a newly organized Oregon corporation. The shareholders of New Keeter were James D. Nydigger, Kelly L. Nydigger, Pamela J. Harris, Kimberly A. Crandall and Bruce W. Kelm. New Keeter paid cash and assumed certain listed liabilities in exchange for

---

[1] The Act was originally codified as ORS 284.110 to 284.260. The 1989 legislature renumbered the statute 284.115 to 284.285. The 1991 legislature renumbered it again as ORS 285.570 to 285.620. All references in this order are to the 1987 Replacement Part unless otherwise noted.

the business assets of Old Keeter. The transaction was structured as an asset purchase to avoid unknown liabilities of Old Keeter.

In the process of negotiating the purchase, New Keeter inquired of the county assessor about the property's tax-exempt status under the enterprise zone exemption. The assessor's office wrote a letter indicating that, if the property were disqualified, all of the past taxes would be forgiven. Representatives of the parties signed a copy of this letter as one of the escrow documents. The sale of the assets closed on July 13, 1990. Simultaneously with the purchase of the assets, New Keeter sold part of the assets to its own shareholders and then leased them back.[2] On July 23, 1990, New Keeter changed its name from Pentadyne Technologies, Inc., to Keeter Manufacturing, Inc., and Old Keeter changed its name from Keeter Manufacturing to Keeter, Inc.

The assessor learned of the sale and concluded it disqualified the property from tax exemption. The assessor attempted to disqualify the property for the 1990-91 tax year. However, New Keeter appealed to defendant, which ruled that, because the sale took place after July 1, 1990, the property remained exempt for 1990-91. *See* ORS 311.410. In response, the assessor disqualified the property for 1991-92. Plaintiff again appealed and this time defendant's opinion and order upheld the assessor's disqualification of the property.

The issues are:[3]

(1)    Is property, which is qualified for and receiving an enterprise zone tax exemption, disqualified by its sale?

(2)    If the subject property was disqualified, which law governs that disqualification?

## SALE OF PROPERTY

As previously indicated, the purpose of an enterprise zone is to "stimulate employment, business and industrial

---

[2] The shareholders formed a partnership called "Five Star Technologies" to purchase the property and lease it back to New Keeter.

[3] Plaintiff pleaded quasi estoppel, but at oral argument counsel agreed that the assessor's letter was not misleading.

growth in the depressed areas of this state" by providing assistance to businesses and industries and by providing "tax incentives in those areas." ORS 284.130. The property tax exemption was provided in ORS 284.210. While that section is lengthy, the critical portion states:

"Upon compliance with ORS 284.240(1), *qualified property* of a *qualified business* is partially exempt from taxation, * * *." (Emphasis added.)

ORS 284.210 sets forth the application process and describes "qualified property." Generally, qualified property consists of new buildings or modifications to buildings; all real property machinery and equipment that is newly purchased, leased, or transferred into the enterprise zone; and items of personal machinery or equipment which meet the same conditions, plus certain true cash value standards. Land is expressly excluded from qualified property.

The other half of the equation, the qualified business firm, is defined as:

"[A] business firm satisfying the requirements of ORS 284.220(1) to (8)." ORS 284.110(9).

Moving across the statutory framework, we find that ORS 284.220 describes a "qualified business firm" as one which carries on the operation of a trade or business in the enterprise zone, employs a certain percentage of workers from within the zone and employs a certain percentage of workers from special segments of the population. The section excludes retail business.

An eligible business must request an exemption from the Department of Revenue.

"After designation of an enterprise zone, each qualified business firm in such zone shall submit annually to the Department of Revenue a statement on a form supplied by the Department of Revenue requesting the tax exemption allowed under ORS 284.210. * * * The statement shall be accompanied by an approved form stating that the business firm meets the definition of a qualified business firm. A copy of the statement submitted by each business firm to the Department of Revenue shall be forwarded to the governing body of the county or city in which the enterprise zone is located." ORS 284.230(1).

The above provisions indicate that the legislature carefully crafted the conditions for obtaining an enterprise zone property tax exemption. Also to be considered is the Oregon Supreme Court's statement that:

> "Taxation of property is the rule, and exemptions are the exception. Exemptions are matters of legislative grace, and the exemption statutes are to be strictly, but reasonably, construed." *Skyline Assembly of God v. Dept. of Rev.*, 274 Or 259, 263, 545 P2d 879 (1976) (citations omitted).

It is in this light the court must examine ORS 284.250. The relevant portion of that statute provides:

> "(1) If, prior to the expiration of the final assessment year set forth in ORS 284.210 (3) and (4), qualified property granted exemption from taxation under ORS 284.210 (1) to (4) is *sold, exchanged, transported* or otherwise *disposed of* for use outside the enterprise zone, or if, prior to the expiration of such final assessment year, the qualified business firm closes or substantially curtails the operation of the trade or business in which such property is used, the qualified business firm or the owner of qualified property leased by the qualified business firm shall, within 60 days, notify the assessor in writing. Upon receipt of the notice the assessor shall disqualify the property for the exemption for the following tax year and additional property taxes shall be imposed in an amount equal to the proportions indicated in paragraphs (a) to (e) of this subsection together with interest as provided in ORS 311.213." (Emphasis added.)

■      As indicated above, the statutes appear carefully designed to provide limited benefits. They establish a necessary link between qualified property and a qualified business firm. An eligible business firm becomes a qualified firm only with respect to specific property. Under the Act, sale of qualified property to another firm severs that link. The purchasing firm can only be qualified with regard to specific property. Because only new property can be qualified, it is impossible for property, once exempted within the zone, to be sold to another firm and be qualified property, nor can the purchasing firm be a qualified firm as to that property.[4]

---

[4] The 1993 Legislature amended the statute (ORS 285.597(3)) to allow sale from one qualified firm to another, but that provision came too late to help plaintiff. Or Laws 1993, ch 773, § 11.

Plaintiff argues that the language providing for disqualification requires the property to be used outside the enterprise zone; *i.e.,* the phrase "for use outside the enterprise zone" modifies "sold," "exchanged," "transported" and "otherwise disposed of." Under this view, a sale would disqualify the property only if it were sold "for use outside the enterprise zone." ORS 284.250(1). While this may be grammatically correct, it does not address the other conditions imposed by the statute. Plaintiff assumes qualification of both the business and the property does not have to continue after initial qualification. That assumption is contrary to the statutory scheme.

■     New Keeter is a different firm than Old Keeter. Also, there is no indication that New Keeter is a qualified business firm. Under these facts, a sale of the property to New Keeter disqualifies the property for the enterprise zone tax exemption.

## APPLICABLE LAW

The parties dispute the law governing the penalties for disqualification. As indicated above, the 1987 Act provided different penalties for disqualification than are found in the 1989 Act. Although the 1989 Act repealed the old penalty provisions of the Enterprise Zone Act, it also contained a savings clause:

> "This Act and the repeal of ORS 284.110 to 284.260 and sections 18 and 19, chapter 769, Oregon Laws 1987, by this Act do not affect an act done or proceeding begun, or right accruing, accrued or acquired, or liability incurred, before the effective date of this Act, under the law then in effect." Or Laws 1989, ch 1015, § 25.[5]

The Enterprise Zone Act was again amended in 1991. Oregon Laws 1991, ch 459. Although those amendments did not become effective until September 29, 1991, section 451 expressly provided:

> "The amendments to ORS 284.280, * * * and sections 4, 6 and 8 to 12, chapter 720, Oregon Laws 1981 * * * first apply to penalties imposed for disqualification from exemption or special assessment occurring after December 31, 1990."

---

[5] The effective date of the 1989 Act was October 3, 1989.

In summary, portions of the 1991 Act were made retroactive while portions of the 1987 Act remained in effect after repeal. Plaintiff contends that the instant matter is governed by the 1987 law because the disqualification, if it occurred, took place before the 1991 law was enacted. In opposition, defendant claims the 1990-91 law applies because the penalties involved were imposed after December 31, 1990.

■       The underlying question is whether the subject property was disqualified as of July 13, 1990, even though it remained exempt for the remainder of that tax year. The court concludes that the legislature intended property to be disqualified as of the date of the disqualifying event. The language in ORS 284.280(4) (1989 Replacement Part), indicates that where no notice of disqualification is given, the assessor will discover that the property no longer qualifies. Also, the legislature used a calendar year in the 1991 legislation for disqualification penalties. This suggests an intent to equate disqualification with an event, not the beginning of a tax year. Consequently, while the tax-exempt status of the property may continue until the next tax year, disqualification occurs at the time of the disqualifying event. In this case, the disqualifying event took place on July 13, 1990. This was before the effective date of the 1991 Act. By virtue of the savings clause contained in the 1989 Act, the penalties to be imposed for this disqualification are those set forth in the 1987 Act.

In summary, sale of the property on July 13, 1990, resulted in disqualification for exemption. Under the savings clause contained in the 1989 Act, the penalties to be imposed as a result of that disqualification are the penalties provided in the 1987 law.[6]

Based on these findings and conclusions, plaintiff's motion for summary judgment should be granted. Now, therefore,

IT IS ORDERED that Keeter Manufacturing, Inc.'s Motion for Summary Judgment is granted; and

---

[6] The parties agree the assessor's letter dated June 28, 1990, correctly sets forth the consequences of disqualification which occurred approximately two weeks later.

IT IS FURTHER ORDERED that Department's Motion for Summary Judgment is denied. Costs to neither party.