Argued October 21, affirmed November 29, 1927.

# CORPORATION OF THE SISTERS OF MERCY *v.* LANE COUNTY ET AL.

(261 Pac. 694.)

**Taxation—There is No Exemption from Taxation, Unless Provided for by Law.**

1. There is never any exemption from taxation, unless it is provided for by law, since power of taxation is essential attribute of sovereignty.

**Taxation—Hospitals, as Such, Enjoy No Inherent Exemption from Taxation.**

2. Hospitals, as such, enjoy no inherent exemption from taxation, and hospital property is taxable, except so far as such property is exempted by legal enactment.

**Taxation—Whether Hospital is Charitable Institution Within Taxation Statute Depends on Its Purpose Rather Than Whether It Receives Pay Patients (Or. L., § 4235).**

3. Test which determines whether hospital is charitable within Section 4235, Or. L., exempting property of charitable institutions from taxation, is its purpose, and, where hospital can otherwise be classed as charitable institution, fact that patients able to pay are required to do so does not deprive it of its charitable character.

**Taxation—Evidence Held Sufficient to Show That Hospital was Charitable Institution Within Exemption Statute (Or. L., § 4235).**

4. Evidence *held* sufficient to show that hospital conducted by Sisters of Mercy was charitable institution, within Section 4235, Or. L., providing for exemption from taxation of property of charitable institutions.

**Constitutional Law—Every Section, Clause, and Word of Constitution is to be Regarded as Though it were Welded into Place.**

5. Constitution is instrument of such high and solemn import that every section, clause, and word is to be regarded as though it were welded into place.

**Taxation—Amendment of Constitution to Exempt Certain Ships from Taxation Did not Inhibit Legislature from Making Further Exemptions Under Constitution (Const., Art. IX, § 1b).**

. 6. Amendment of Constitution, Article IX, by adding Section 1b, exempting certain ships and vessels from taxation, did not inhibit legislature from making further exemptions under such article,

---

1. See 26 R. C. L. 302.
2. See 26 R. C. L. 318.
3. Hospital as charity within tax exemption provisions, see note in Ann. Cas. 1917B, 278.

which provided for exemption of municipal, educational, literary, scientific, religious and charitable institutions.

**Constitutional Law—Constitution and Amendments must be Construed as One Instrument With Reference to Its Purpose.**

7.  Constitution and amendments thereto must be construed as one instrument with reference to purpose for which Constitution was ordained.

**Constitutional Law—Corporation is not "Citizen" Within Constitutional Provisions Relative to Privileges and Immunities of Citizens (Const., U. S., Amend. 14).**

8.  Corporation is not "citizen" within meaning of United States Constitution, declaring that citizens of each state shall be entitled to all privileges and immunities of citizens in several states or within Fourteenth Amendment that no state shall make law abridging privileges of citizens of United States.

**Constitutional Law—Statute Exempting Property of Charitable Institution from Taxation Held not Invalid as Granting Special Privileges (Or. L., § 4235, subd. 3; Const., Art. I, § 20).**

9.  Section 4235, subdivision 3, Or. L., exempting property of charitable institutions from taxation, *held* not invalid as contravening Article I, Section 20, Constitution, providing that no law shall grant any citizen, or class of citizens, privileges or immunities not belonging equally to all citizens.

**Taxation—Reasonable Classification, Relating to Exemption from Taxation, may be Made by Legislature.**

10.  Reasonable classification, relating to exemption from taxation, may be made by legislature without violating equal protection of laws provided by federal and state Constitutions.

**Taxation—Statute Exempting Property of Charitable Institutions from Taxation Held not to Contravene Constitutional Provision for Uniform Taxation (Or. L., § 4235, subd. 3, and subd. 9, Added by Laws 1919, Chap. 104; Const., Art. I, § 32, and Art. IX, § 1, Both as Amended in 1917).**

11.  Section 4235, subdivision 3, Or. L., exempting property of charitable institutions from taxation, *held* not invalid as contravening Constitution, Article I, Section 32, and Article IX, Section 1, both as amended in 1917, requiring uniform taxation, in view of Laws of 1919, page 704, Laws of 1921, page 314, and Laws of 1919, chapter 104, re-enacting Section 4235, Or. L., and adding subdivision 9.

**Constitutional Law—Statutes are Presumed Constitutional.**

12.  There is presumption that statute is not in conflict with Constitution.

---

8.  Protection of corporations from special and hostile legislation, see note in 62 Am. St. Rep. 165. Corporation as "citizen" within federal Constitution, see notes in Ann. Cas. 1917C, 875; 14 L. R. A. 580; 60 L. R. A. 330.

12.  See 6 R. C. L. 78.

**Constitutional Law—All Reasonable Doubts Favor Constitutionality of Statute.**

13. All reasonable doubts must be resolved in favor of constitutionality of act assailed.

**Statutes—Statute, Re-enacted in Same Language, is not Considered as New Enactment of Law.**

14. Where statute has been re-enacted from time to time, but always in same language, such re-enactment is considered as continuation of language so repeated, and not as new enactment of law.

**Constitutional Law—Judiciary cannot Determine Whether Certain Property Should be Exempt from Taxation.**

15. Whether certain property should be exempt from taxation is purely legislative question, which judiciary is not permitted to determine.

**Taxation—Land Adjacent to Buildings of Charitable Institution, Reasonably Necessary to Its Purposes, and Used Directly to Accomplish Them, is Exempt from Taxation Under Statute (Or. L., § 4235, subd. 3).**

16. Under Section 4235, subdivision 3, Or. L., exempting from taxation such real estate of charitable institutions as shall be actually occupied for purpose for which institution is incorporated, ground adjacent to building which is reasonably necessary or appropriate to purposes and objects in view, and used directly for promotion and accomplishment thereof, is exempt from taxation.

---

Charities, 11 C. J., p. 304, n. 67, 70.
Constitutional Law, 12 C. J., p. 708, n. 36, p. 710, n. 54 New, p. 791, n. 19, p. 795, n. 32, p. 798, n. 55, p. 802, n. 94, p. 882, n. 66, p. 883, n. 98, p. 1109, n. 50.
Corporations, 14 C. J., p. 67, n. 34, 38, 39.
Expressio Unius Est, 25 C. J., p. 220, n. 17.
Hospitals, 30 C. J., p. 462, n. 4, 6.
Taxation, 37 Cyc., p. 715, n. 60, p. 885, n. 94 New, p. 888, n. 12 New, 13, p. 929, n. 15, p. 930, n. 18, 19.

From Lane: G. F. SKIPWORTH, Judge.

Department 2.

This suit was instituted to restrain the officers of Lane County from assessing, levying and collecting taxes upon the plaintiff's property known as Mercy Hospital, and alleged to have been devoted to charitable uses.

The plaintiff corporation was organized by representatives of a religious society known as the Sisters of Mercy, under the name of "Corporation of the Sisters of Mercy," its purpose being, according to its articles, "entirely religious, educational and charitable." The articles further state:

"That the principal objects are the opening and establishment of schools * * ; the establishing and maintaining homes for the aged, and of homes for girls without employment and without homes; the maintaining and establishing of hospitals wherever the officers of the corporation shall deem hospitals necessary within the state of Oregon. * *

"That the estimated value of the properties and moneys possessed by this corporation at the time of making and signing these articles of incorporation is about the sum of $2,000; and the only sources of income which this corporation has or will have is the moneys which may be derived by them from schools and hospitals, together with the donations which may be made to it from time to time by the charitable."

The property in question, consisting of a hospital and grounds situate in Eugene, Lane County, Oregon, involves two adjoining tracts; one containing 3.178 acres, acquired by the Society in 1912, being designated in the record as Tract No. 1; the other a tract of 2.6 acres, purchased in September, 1921, and referred to as Tract No. 2. The hospital is located on Tract No. 1.

The court decreed that Tract No. 1 was exempt from taxation, but denied the exemption of Tract No. 2. The defendant appeals from that part of the decree exempting Tract No. 1 from taxation, and the plaintiff undertook to appeal from that part of the decree holding Tract No. 2 to be taxable, but neglected to perfect the appeal.          AFFIRMED.

For appellant there was a brief and oral argument by *Mr. H. E. Slattery.*

For respondent there was a brief and oral arguments and *Mr. Donald Young* and *Mr. L. L. Ray.*

*Mr. J. P. Kavanaugh* and *Mr. Hall S. Luck, Amici Curiae,* on brief.

BROWN, J.—Section 4235, Or. L., provides:

"The following property shall be exempt from taxation: * *

"(3) The personal property of all literary, benevolent, charitable and scientific institutions incorporated within this state, and such real estate belonging to such institutions as shall be actually occupied for the purposes for which they were incorporated."

The defendants aver that Mercy Hospital is not exempt from taxation as a charitable corporation under the provisions of the statute hereinabove set out; and, further, that if the hospital is exempt under that statute, such statute is unconstitutional and void.

Is Mercy Hospital a charitable institution as defined by law? In this connection, the uncontradicted testimony of the' president of the Society that founded the hospital is enlightening. She testified, in part, as follows:

"Q. You know the objects and purposes of that society? A. Yes.

"Q. Will you state what they are? A. We take care of the poor and sick, and have schools and orphan asylums, * * and homes for the aged, and hospitals.

"Q. I will ask you if there is any stock issued by the corporation of the Sisters of Mercy. A. Nothing.

"Q. Do any of the officers receive any profit? A. Nothing.

"Q. Any of the Sisters receive anything? A. No, certainly.

"Q. Will you state whether any money or income of the Mercy Hospital here is turned over to the Catholic Church, in any way? A. Not one cent.

"Q. Does any of it go to any other institution? A. No.

"Q. In case of a surplus from the operation of the Mercy Hospital, what would be done? A. We would use it to improve and do what we can for the place where we are."

She testified that it was not the intention or purpose of the corporation to sell any part of the property, and that it was not held for speculation.

Sister Mary Lourdes, one of the organizers of the corporation, and who had been superintendent of the hospital for a number of years, testified that there were buildings on the lands constituting a graduate nurses' home, a student nurses' home, a hospital, and a pump-house; that a small portion of the land was used for garden and orchard purposes for the benefit of the hospital; that the hospital was equipped with 50 to 60 beds, and that one floor of the nurses' home was likewise equipped with hospital beds; that the general equipment of the hospital consisted of an X-Ray laboratory, therapeutic light and modern tables, modern sterilizers, a dish-washer, a mangle and washer; that the hospital was not operated for profit, and that if any surplus was accumulated, it went to pay off the indebtedness, or "is put into the building, put into the hospital, to the upkeep of the patients and taking care of patients." She testified that none of the money derived from the operation of the hospital was invested anywhere other than in the local hospital. In answer to the following questions by the court she testified:

"The Court: Now, do the Sisters who operate the hospital get any salary at all? A. No, Judge.

"Q. From the proceeds of the hospital? A. No, Judge, absolutely nothing. The Sisters never get any salary.

"Q. Are there any dividends declared in any way? A. No, Judge.

"Q. Well, now, I would ask you further, would it be possible under your system or articles of incorporation for any dividends to be declared to the members? A. No, sir, we make a vow of property (poverty), and we cannot possess one penny.

"Q. Do any of the Sisters have any property? A. No, sir.

"Q. Or can they have any property? A. No, sir.

"Q. What is the purpose of operating the hospital? A. For the purpose of taking care of the sick and those who need care, and taking care of people who need spiritual help as well as temporal help.

"Q. How many nurses are there now, can you state? A. I think there are about ten now, I am not sure.

"Q. Are those nurses Sisters, or not? A. Some of them are sisters. There is one Sister nurse there now. One-half are graduate and one half are pupil nurses."

She testified that the nurses who were paid were not Sisters of Mercy; that the Sisters who were at the hospital had no outside employment, but that they devoted all of their time to the work of the hospital; that their duties consisted of "all the duties you could possibly think of," because they supervised every department, i. e., a Sister supervised the entire bookkeeping department, another the housekeeping department, and yet another the buying department; that a Sister in the laboratory supervised the laboratory, another was head of the tray room, and another

supervised the nurses' home. She testified that the Society made no discrimination on account of the religious faith of patients, nor in regard to "race, creed or color."

She further testified:

"Q. Do you discriminate whether they are able to pay or not? A. No, sir, they get just as good care and treatment whether they pay or not. We give them just as good care.

"The Court: Suppose a patient comes to the hospital and they are unable to pay; that is, they haven't the money. Do you take care of them just the same? A. Yes, Judge.

"The Court: Give them the same care? A. We have never refused any one.

"The Court: The same care? A. Yes, Judge. * *

"Q. Do you make a practice of giving bills to all outgoing patients? A. Yes, as a matter of not being imposed on. We take care of people who need the care. But if you did not do that you would have people coming and staying and they would not want to leave. If people have it we ask for it. If not, we don't.

"Q. Do you ever have patients come who you know in advance cannot pay? A. Yes.

"Q. What is done about taking them? A. Absolutely nothing. Take them in and take care of them. The doctors always tell us when the patients are unable to pay and ask us if we will take care of them, and we say yes. We never refuse any cases.

"Q. Is any difference made in the care of these patients than in the care of other patients? A. Certainly not. A patient needs the best care, whether they have the money or not. * *

"Q. Now, just what attention and care do you give to the patient, that is, what service? A. They have twenty-four hours' service of the nurse, they have certain medicine given them free, and they have the best of tray service. * *

"Q. How about services of the doctor? Do you control that in any way? A. No, we never know what the doctors charge. That is their own business. They charge their own prices.

"Q. Do you control in any way what doctor a patient has? A. No.

"Q. State whether you maintain a free dispensary out there? A. No, we don't maintain a free dispensary, but should anyone come who needed medicine and hadn't the money to pay for it, we would give it to them.

"Q. Supposing you have a charity patient up there who needs the attention of a doctor and cannot pay for a doctor. What practice do you follow in regard to getting a doctor for him? A. We ask one of the doctors if they will kindly look after the patient, and the doctor is under obligation to the hospital, he feels he is, and he usually does it, he never refuses. * *

"Q. What doctors are allowed to practice in the hospital? A. All doctors of good repute."

She then testified concerning the maintenance of a training school for the nurses, and that, because of the necessity for having them near at hand in case of an emergency, all nurses employed at the hospital resided at the nurses' home situate upon the hospital grounds. She testified that the tennis court upon the grounds was there to afford recreation for the pupil nurses and employees of the hospital, and sometimes the patients.

1, 2. The power of taxation is an essential attribute of sovereignty. Taxation is the rule, and exemption from taxation the exception. There is never an exemption from taxation unless it is provided for by law. The section involved provides for the exemption from taxation of the personal property of literary, benevolent, charitable and scientific institutions

incorporated within this state, and such real property belonging to such institutions as shall be occupied for the purpose for which such institutions were incorporated. Hospitals, as such, enjoy no inherent exemption from taxation; and hospital property is taxable except so far as such property is exempted by legal enactment: 26 R. C. L. Taxation, § 283. In this connection, it is said by the editors of R. C. L.:

"Where the exemption is given to institutions of public charity, it is generally considered as extending to all eleemosynary hospitals." 13 R. C. L., p. 943.

Again, 2 Cooley, Taxation (4 ed.), Section 752, thus states the rule:

"Hospitals are sometimes expressly exempted by name, but where not so exempted they are generally held exempt as charitable or benevolent institutions although they have a department for training nurses. * * .The exemption as a charitable institution is not affected by the acceptance of pay patients, at least where the proceeds from pay patients is all devoted to upkeep and extending treatment free to paupers."

The case of *Lutheran Hospital Assn. of South Dakota* v. *Baker, County Treasurer,* 40 S. D. 226 (167 N. W. 148), is much in point, and cites a wealth of authorities that are applicable to the facts of record in this cause. The opinion of the court in that case is comprehensive and instructive, and contains an extensive review of a number of cases, in part as follows:

"In the case of *Hot Springs School District* v. *Sisters of Mercy,* 84 Ark. 497 (106 S. W. 954), under a statute exempting from taxation property exclusively used for public charity, a hospital, where those who are able to pay are required to do so, and those who are not able to pay are treated free, and where the institution also maintained a school for nurses,

and which employed a number of girls who were taking instruction, who assisted in nursing the patients, and where all moneys received from any source was used to maintain the institution, and to pay borrowed money, and where such institution was open to any and all worthy sick persons not afflicted with contagious or infectious diseases, or where no one was refused on account of religion or inability to pay, and where the whole of the money received was devoted to the charitable object which the institution was intended to further, it was held that the property so used by the hospital was exempt from taxation. And a great many other decisions hold to the same effect, among which are the following: *Michigan Sanitarium Association* v. *Battle Creek,* 138 Mich. 676 (101 N. W. 855); *German Hospital* v. *Board of Review,* 233 Ill. 246 (84 N. E. 215); *In re Taxes (County of Hennepin* v. *Brotherhood of Gethsemane),* 27 Minn. 460 (38 Am. Rep. 298, 8 N. W. 595); *Mason County* v. *Hayswood Hospital,* 167 Ky. 17 (179 S. W. 1050); *Sanitarium* v. *Stoneham,* 205 Mass. 335 (91 N. E. 385); *Parks* v. *Northwestern University,* 218 Ill. 381 (75 N. E. 991, 4 Ann. Cas. 103, 2 L. R. A. (N. S.) 556); *Duncan* v. *Nebraska Sanitarium Assn.,* 92 Neb. 162 (137 N. W. 1120, Ann. Cas. 1913E, 1127, 41 L. R. A. (N. S.) 973); *Board of Review* v. *Chicago Policlinic,* 233 Ill. 268 (84 N. E. 220)."

The opinion likewise approves and quotes excerpts from the cases of *Dayton* v. *Trustees of Speers Hospital,* 165 Ky. 56 (176 S. W. 361, Ann. Cas. 1917B, 276, L. R. A. 1917B, 779), *Sisters of St. Francis* v. *Board of Review,* 231 Ill. 317 (83 N. E. 272), *St. Joseph's Hospital Assn.* v. *Ashland County,* 96 Wis. 636 (72 N. W. 43), and *State* v. *Powers,* 10 Mo. App. 263 (74 Mo. 476). In the case last cited the court said:

"The fact that paying patients are taken, the profits derived from attendance upon these patients

being exclusively devoted to the maintenance of the charity, seems rather to enhance the usefulness of the institution to the poor. * * The fact of receiving money from some of the patients does not, we think, at all impair the character of the charity, so long as the money thus received is devoted altogether to the charitable object which the institution is intended to further.''

Many other cases in point are cited in the case of *Nuns of Third Order of St. Dominic* v. *Younkin et al.,* 118 Kan. 554 (235 Pac. 869). This case holds that a corporation conducting a hospital organized for charitable purposes, having no capital stock, declaring no dividends, devoting all the income to the care of persons sick or injured and improving and extending its facilities for so doing, and receiving as patients without discrimination all sick or injured persons, regardless of race, creed or wealth, is a charity.

3. 30 C. J. 462, thus states the proposition which governs in determining this question:

''The test which determines whether a hospital is charitable or otherwise is its purpose; that is, whether it is maintained for gain, profit, or advantage, or not. * * Where a hospital can otherwise be classed as a charitable institution, the fact that patients who are able to pay are required to do so does not deprive it of its charitable character.''

There are many authorities sustaining this proposition.

So, if a particular enterprise exists to carry out a purpose recognized in law as charitable, it is a charity. If it is maintained for profit, it is not. See 11 C. J., p. 303.

There is testimony in the record to the effect that Mercy Hospital of Eugene, Oregon, is a charity hospital. The officials in charge of the institution main-

tain that the doors of the hospital are open alike to the rich and poor who are sick or injured, without regard to race, creed or color, and that the poor and friendless receive the same treatment that is accorded to the pay patients; further, that the receipts from pay patients go to the upkeep and maintenance of the institution, and that the institution is conducted without profit to its founders and the officials in charge. This testimony is not contradicted; neither is there any contention that the hospital has ever denied assistance to the poor and needy.

4. The paramount purpose of this institution, as shown by the testimony hereinabove reviewed, obviously determines its classification as a charitable institution, and therefore exempt from taxation: 2 Cooley, Taxation (4 ed.), § 739.

It is asserted that subdivision 3, Section 4235, Or. L., is in conflict with the following constitutional provisions of this state:

"No law shall be passed granting to any citizen or class of citizens privileges or immunities which, upon the same terms, shall not equally belong to all citizens." Section 20, Art. I, Or. Const.

"No tax or duty shall be imposed without the consent of the people or their representatives in the legislative assembly; and all taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax." Section 32, Art. I, Or. Const., as amended June 4, 1917.

"The legislative assembly shall, and the people through the initiative may, provide by law uniform rules of assessment and taxation. All taxes shall be levied and collected under general laws operating uniformly throughout the state." Section 1, Art. IX, Or. Const., as amended June 4, 1917.

Article IX of the Oregon Constitution was amended by the people at the general election held November 7, 1916, by adding thereto Section 1–b, which exempts from all taxes excepting taxes for state purposes, until January 1, 1935, all ships and vessels of fifty tons or more capacity, engaged in coasting or foreign trade, whose home ports of registration are in Oregon. The intent, purpose and principle sought by the amendment is clearly apparent from a perusal of the following taken from page 5 of the Voters' Pamphlet of 1916, prepared by the Secretary of State in accordance with law:

"Constitutional Amendment—Referred to People by the Legislative Assembly.

"Submitted by the Legislature—Ship Tax Exemption Amendment—An amendment to Article IX of the Constitution of the State of Oregon exempting from taxation until January 1, 1935, except taxes for state purposes only, all ships and vessels of fifty tons or more capacity, engaged in either passenger or freight coasting or foreign trade, whose home ports of registration are in the state of Oregon, for the purpose of encouraging registration of such vessels in Oregon, which would otherwise register in other states.

302 Yes.                    Vote Yes or No.
303 No.

"Senate Joint Resolution No. 18.

"Be it Resolved by the Senate of the State of Oregon, the House of Representatives jointly concurring:

"That Article IX of the Constitution of the State of Oregon be, and the same is hereby, amended, by adding thereto an additional section to be numbered Section 1–b of Article IX, and which shall read as follows:

"Section 1-b. All ships and vessels of fifty tons or more capacity engaged in either passenger or freight coasting or foreign trade, whose home ports of registration are in the state of Oregon, shall be and are hereby exempted from all taxes of every kind whatsoever, excepting taxes for state purposes, until the first day of January, 1935.

"Resolved, That the secretary of state be and he is hereby authorized and directed to set aside one page in the official pamphlet containing initiative and referendum measures to be voted upon in the year 1916, in which arguments supporting this proposed amendment may be printed; and be it further

"Resolved, That a committee of one senator and two representatives be appointed to prepare and file with the secretary of state arguments in support of this amendment."

5. It is a rule of construction that a Constitution is an instrument of such high and solemn import that every section, clause and word thereof is to be regarded as though it were welded into place: *State ex rel.* v. *Smith*, 158 Ind. 543 (63 L. R. A. 116, 63 N. E. 25, 64 N. E. 18).

The defendants contend in this court that the adoption of Section 1-b, Article IX, Oregon Constitution, exempting certain classes of vessels from taxation other than state taxation, automatically extinguished all legislative power to exempt other property from taxation, and invoke the application of the familiar maxim that "the express mention of one thing implies the exclusion of another." However, as to the wisdom of a general acceptance of the maxim, giving to it a comprehensive interpretation, we carve the following from Broom's Legal Maxims (8 ed.), page 506:

"Great caution is necessary in dealing with the maxim *expressio unius est exclusio alterius* (g), for,

as Lord Campbell observed in *Saunders* v. *Evans* (h), it is not of universal application, but depends upon the intention of the party as discoverable upon the face of the instrument or of the transaction."

It is plain from the face of the amendment that its purpose was to encourage the registration of vessels in Oregon by exempting them from local taxation for a limited period of time.

6, 7. At the time of the adoption of Article IX, Section 1-b, Oregon Constitution, exempting ships from local taxation, that article provided for the exemption of municipal, educational, literary, scientific, religious and charitable institutions; and the contention that the adoption of Section 1-b providing for such exemption inhibits the legislature from making further exemptions is wholly without merit. The Constitution and the amendments thereto must be construed as one instrument, and with reference to the purposes for which the Constitution was ordained.

8, 9. Does the exemption statute conflict with Section 20, Article I, of our Constitution?

The defendants assert, in effect, that a corporation is a citizen within the meaning of Section 20, Article I, Oregon Constitution, and of the Fourteenth Amendment of the federal Constitution. A corporation is deemed a citizen for many purposes. But, as bearing upon the defendants' contention in this regard, note the following:

"It is a well-settled principle of constitutional law that a corporation is not a citizen within the meaning of that clause of the Constitution of the United States which declares that 'the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states,' or within the provisions of the

Fourteenth Amendment that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." 14 C. J. 67, and authorities collated in note 39.

However, by a long line of decisions this court has consistently held against the defendants' contention that the exemption statute offends against Section 20, Article I, Oregon Constitution. A similar question first came before the court in the case of *In re Oberg,* 21 Or. 406 (28 Pac. 130, 14 L. R. A. 577). It was there contended that a statute enacted by the legislature of 1889 was unconstitutional and void, in that it provided that no officer or seaman of a seagoing vessel or ship should be arrested or imprisoned for debt, this provision, according to the argument, being in direct conflict with Section 20 of the Bill of Rights. In rendering the opinion in that case, Mr. Justice LORD, speaking for the court, said:

"It is plain * * from this statement, that it is the immunity from arrest for debt granted to this class of citizens, and not that any of such class engaged in the same business are subjected to different restrictions, or that they are granted different privileges under the same conditions, which constitutes the ground upon which the invalidity of the section of the act is predicated. All sailors of a seagoing vessel within the prescribed limits are treated alike, and entitled to enjoy the privileges or immunities granted. The act prescribes the same rule of exemption to all persons placed in the same circumstances. It does not grant to a sailor immunity from arrest for debt, and refuse it to his neighbor, if they be similarly situated. The same privilege or immunity is extended by the act to all in the same situation. Any person who is a sailor may enjoy the immunity, and any citizen desiring such immunity may have it in the words of the Constitution, 'upon the same

terms,' by becoming a sailor. While one may enjoy the benefit of the exemption, and another may not, this results not because the statute favors one, and discriminates against another, but because one brings himself within its terms and the other does not.''

The court then proceeds to cite in support of this proposition cases from Iowa and Tennessee, both states having similar constitutional provisions.

See, also, the following Oregon cases: *State* v. *Randolph,* 23 Or. 74 (31 Pac. 201, 37 Am. St. Rep. 655, 17 L. R. A. 470); *State ex rel. Bell* v. *Frazier,* 36 Or. 178 (59 Pac. 5); *State* v. *Muller,* 48 Or. 252 (85 Pac. 855, 120 Am. St. Rep. 805, 11 Ann. Cas. 88); *State* v. *Baker,* 50 Or. 381 (92 Pac. 1076, 13 L. R. A. (N. S.), 1040); *Jones* v. *Union County,* 63 Or. 566 (127 Pac. 781, 42 L. R. A. (N. S.) 1035); *Churchill* v. *City of Albany,* 65 Or. 442 (133 Pac. 632, Ann. Cas. 1915A, 1094); *State* v. *Bunting,* 71 Or. 259 (139 Pac. 731, Ann. Cas. 1916C, 1003, L. R. A. 1917C, 1162); *State* v. *Catholic,* 75 Or. 367 (147 Pac. 372, Ann. Cas. 1917B, 913); *Wright* v. *Wimberly,* 94 Or. 1 (184 Pac. 740).

Before proceeding further, we will observe that the constitutional provision so earnestly invoked by the defendants is not peculiar to Oregon, but was taken from Section 23, Article I, Indiana Constitution.

10. Referring to the constitutional requirement that taxation be equal and uniform, it has been held time and again that reasonable classification relating to exemption may be made by the legislature, without violating the equal protection of the laws provided by the federal and state Constitutions: 2 Cooley, Taxation (4 ed.), § 663. See Black on Constitutional Law, p. 450.

11. The case of *Standard Lbr. Co.* v. *Pierce et al.,* 112 Or. 314 (228 Pac. 812), contains many authorities relating to the power of classification possessed by the states in respect to taxation. In treating of Section 32, Article I, and Section 1, Article IX, Oregon Constitution, as amended in 1917, this court said:

"Demand was made for removal of those constitutional restrictions, which prevented the classification of property in respect to its nature, condition or class, and the imposition thereon of different rates of taxation upon different classes of property; and which excluded considerations of faculty or ability to pay, equality of sacrifice or governmental advantages provided to the taxpayer: See Voters' Pamphlet, Special Election, June 4, 1917, page 14; Cooley on Taxation (4 ed.), §§ 254, 262; *Wheeler* v. *Weightman,* 96 Kan. 50 (149 Pac. 977, L. R. A. 1916A, 846); *State* v. *Bazille,* 97 Minn. 11 (106 N. W. 93, 7 Ann. Cas. 1056, 6 L. R. A. (N. S.), 732); *Maguire* v. *Trefry,* 253 U. S. 12 (64 L. Ed. 739, 750, 40 Sup. Ct. Rep. 479)."

To illustrate the construction placed upon the constitutional provisions in question by a co-ordinate department of government, we note the following legislation:

Pursuant to the authority vested in it, the legislative assembly of 1919 adopted a system of financing highway construction whereby motor-cars were exempted from paying a property tax and, in lieu thereof, were subjected to a license tax. See General Laws of Oregon 1919, Chap. 399. The legislature of 1919 likewise enacted Chapter 104, General Laws of Oregon 1919, which re-enacted Section 3554, Lord's Oregon Laws (now Section 4235, Or. L.), and added thereto subdivision 9, providing for the exemption form taxation of all notes secured by recorded mort-

gages on real property, with the result that that section of the Code now contains nine subdivisions, providing for exemption of different classes of property, and there are other statutory provisions for exemption from taxation of property not included therein. The legislative assembly of 1921 enacted Chapter 165, General Laws of Oregon 1921, entitled:

"An Act to exempt from taxation the property of any honorably discharged Union soldier or sailor of the Mexican war, the war of the rebellion, or the Indian wars in the state of Oregon, or of the widow remaining unmarried of such soldier or sailor, in addition to the property already exempted by law."

So the statute under consideration is not a new enactment of law, but has been a subsisting statute since January 27, 1854. On page 894 of the Deady Code is this provision:

"The following property shall be exempt from taxation: * *

"3. The personal property of all literary, benevolent, charitable and scientific institutions incorporated within this state, and such real estate belonging to such institutions as shall be actually occupied for the purposes for which they were incorporated."

12–14. A persuasive argument in favor of the constitutionality of this statute lies in the fact that, for seventy-three years, or nearly three quarters of a century, it has been treated and acted upon by the people of Oregon as a constitutional act. The appellant now seeks to have it declared invalid; and this, in face of the presumption that a statute is not in conflict with the Constitution, and that all reasonable doubts must be resolved in favor of the constitu-

tionality of the act assailed. This provision reaches back to the territorial days, and antedates the birth of this state. True, it has been re-enacted from time to time, but always in the same language; and such re-enactment is considered as a continuation of the language so repeated, and not as a new enactment of law: *Renshaw* v. *Lane County Court,* 49 Or. 526 (89 Pac. 147).

Defendants say in their brief:

"Appellant fully realizes that when his position is sustained (when the exemption law is held unconstitutional) it will cause much other property to be taxed, as it ought to be."

15. We grant that the annulment of the acts exempting certain personal and real property from the burdens of taxation would add much valuable property to the tax-rolls of Oregon. But, whether or not such exempt property should be taxed is purely a legislative, not a judicial, question; and our Constitution forbids the judiciary from entering upon the domain of the legislative department, a co-ordinate branch of our government. The adoption of a legislative policy exempting hospitals from taxation is predicated upon the theory that the establishment and maintenance of charitable hospitals serves the public welfare: 2 Cooley, Taxation (4 ed.), § 738.

16. Now, what real property is exempt from taxation under the provisions of subdivision 3, Section 4235, Or. L., exempting such real estate "as shall be actually occupied for the purposes for which" the institution is incorporated? The term "land actually occupied for the purpose" means "not only a building and the ground covered by it, but adjacent ground which is reasonably necessary or appropriate

to the purposes and objects in view, and which is used directly for the promotion and accomplishment of the same": *Hennepin County* v. *Brotherhood of Gethsemane,* 27 Minn. 460 (8 N. W. 595, 38 Am. Rep. 298). See *Hibernian Benevolent Society* v. *Kelly,* 28 Or. 173 (42 Pac. 3, 52 Am. St. Rep. 769, 30 L. R. A. 167); *Willamette University* v. *Knight,* 35 Or. 33 (56 Pac. 124).

This case is affirmed.                    AFFIRMED.

RAND, C. J., and BEAN and BELT, JJ., concur.