IN THE OREGON TAX COURT

SOUTHWESTERN OREGON PUBLIC DEFENDER
SERVICES, INC.
*v.*
DEPARTMENT OF REVENUE
(TC 2862)

John P. Meynink, North Bend, represented plaintiff.

Bonni Canary, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Defendant's Motion For Summary Judgment granted April 4, 1990.

**CARL N. BYERS, Judge.**

The assessor denied plaintiff a tax exemption for its personal property for 1987-88. Plaintiff appealed to defendant. By Opinion and Order No. 87-3362 defendant also

denied the exemption. Plaintiff now seeks de novo review in this court.

The parties stipulated to the facts and filed cross-motions for summary judgment.

Plaintiff is a nonprofit corporation[1] providing legal services to indigent persons, most of whom have been accused of crimes. Plaintiff receives no compensation or fees of any kind from its indigent clients. The State Court Administrator (SCA) of the Oregon Judicial Department contracts with non-profit organizations or consortiums of lawyers to provide legal representation to indigents.[2]

Plaintiff contracted to provide indigent defense services for approximately 70 percent of the cases in Coos County. The other 30 percent are handled by a consortium of private attorneys, also under contract with the SCA. Plaintiff's only source of income (other than de minimis amounts) is the SCA contract. Plaintiff receives some work services from students attending a local college. The students receive class credit. The SCA contract payments take into account the number and type of cases and other factors. The contracts are negotiated with the result that different contractors may receive different amounts. Although the consortium of private attorneys in Coos County receives approximately the same amount per case as plaintiff, its contract excludes all murder cases. Also, all the consortium's expenses for investigative services are paid by the SCA outside of and in addition to the contract.

Plaintiff uses the personal property in providing services to its indigent clients. It acquired the property with funds received under its contract with the SCA. If plaintiff is dissolved or liquidated, the property must go to another § 501(c)(3) organization or government entity.

---

[1] Plaintiff is exempt from federal income tax as a "charitable organization" under § 501(c)(3) of the Internal Revenue Code.

[2] The state has a constitutional duty to provide legal representation to individuals accused of crimes. *Gideon v. Wainwright,* 372 US 335, 83 S Ct 792, 9 L Ed 2d 799, 93 ALR2d 733 (1963).

■ ■    ORS 307.130 provides a property tax exemption for certain organizations. The relevant[3] portions of that statute are:

"(1)   Upon compliance with ORS 307.162, the following property owned or being purchased by incorporated literary, benevolent, charitable and scientific institution shall be exempt from taxation:

"(a)   * * * only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions.

"* * * * *

"(2)   An institution shall not be deprived of an exemption under this section solely because its primary source of funding is from one or more governmental entities.

"(3)   An institution shall not be deprived of an exemption under this section because its purpose or the use of its property is not limited to relieving pain, alleviating disease or removing constraints."

Plaintiff's property is used "exclusively" in its work. There is no question that plaintiff is a nonprofit corporation. The only issue before the court is whether plaintiff is a "charitable" organization.

■    In *Oregon Country Fair v. Dept. of Rev.,* 10 OTR 200 (1986), this court found that the meaning of "charitable" had two parts. The first part is an act which is good or beneficial for humans and other living things. The second part entails a gift or giving.

■    In that case, the court limited the first part of "charitable," as used in ORS 307.130, to "its narrow and traditional sense of relieving pain, alleviating disease or removing constraints." (10 OTR at 205.) Citing *Benton Co. v. Allen,* 170 Or 481, 485, 133 P2d 991 (1943). In response, the 1987 legislature

---

[3] Although subsections (2) and (3) were not enacted by the 1987 legislature until after the assessment date in question, they are applicable to this case:

"In any proceeding before the Department of Revenue, the Oregon Tax Court or the Oregon Supreme Court, which involves review of the denial or removal of an exemption under ORS 307.130 for assessment years beginning on or after January 1, 1980, eligibility for exemption of the property that is the subject of the appeal shall be determined under ORS 307.130 as amended by section 1 of this 1987 Act." Or Laws 1987, ch 391, § 2(4).

enacted subsection (3) of ORS 307.130 to overcome this strict interpretation. *YMCA v. Dept. of Rev.*, 308 Or 644, 784 P2d 1086 (1989). The legislative enactment broadens the scope of activities to be exempted.[4]

It is unnecessary to determine how broad a definition the legislature intended. Furnishing legal representation to the indigent falls within the narrow and traditional definition of charity. It is an act which "removes constraints" on the poor.

The second element of charity, that of a gift or giving, presents the more difficult question. Plaintiff contends that it gives its services to indigent defendants. It views itself as performing one of the state's obligations, thereby relieving government of a burden. On the other hand, defendant maintains that plaintiff has merely contracted with the state to provide services. In defendant's view, plaintiff is paid to provide services and there is no gift.

Traditionally, charity has involved notions of love, generosity, kindness, mercy and caring. However, time has changed those traditions. In income tax matters, the courts have found charity to be somewhere between "disinterested generosity" and "quid pro quo." *Singer Co. v. U. S.*, 449 F2d 413, (Ct Cl 1971), 71-2 US Tax Cas (CCH) ¶ 9685. Likewise, market conditions and economic forces have compelled many charitable organizations to operate as commercial enterprises. Nevertheless, even in such circumstances, the courts continue to require some element of giving. In *Utah Cty., Etc. v. Intermountain Health Care*, 709 P2d 265, 276, (Utah 1985), the court stated:

> "[W]e believe that the defendants in this case confuse the element of gift to the community, which an entity must demonstrate in order to qualify as a charity * * * with the concept of community benefit, * * *."

---

[4] This will undoubtedly result in many new questions as to what is charitable. As one court has pointed out:

"It seems apparent to us that almost any activity which is not undertaken for profit and which has beneficial aspects concerning certain segments of our society may readily be classed as 'charitable' under certain of these definitions." *Mountain View Homes, Inc. v. State Tax Commission*, 77 NM 649, 427 P2d 13, 17 (1967).

There the hospital failed to show an "imbalance in the exchange between the charity and the recipient of its services or in the lessening of a government burden." *Id.* at 269.

Here again, this court must consider legislative action taken in response to its decisions. In *Salem Non-Profit Housing, Inc. v. Dept. of Rev.,* 9 OTR 265 (1982), a nonprofit corporation provided housing for lower income families. Its source of funds were the rents paid by the tenants and payments received from the federal government. In that case, this court held that the property of the nonprofit corporation was not exempt because there was no gift or giving involved.

> "In brief, the 'giving' is from the utilization by the federal agencies, under statute, of moneys originally paid as taxes to the federal government by all federal taxpayers. The plaintiff is not a eleemosynary institution. No gift is involved; ergo, there is no 'charity' as is implicitly required by the Oregon statute." *Id.* at 270.

The words "gift" or "giving" imply a voluntary act. To the extent that government has an obligation to provide for the needy, doing so is neither voluntary nor a gift. Government provides by imposing taxes, not by soliciting voluntary contributions. In today's world, much of what government provides are "entitlements." If the needy have a legal right to a benefit, can it be charity? Historically, charitable organizations have been voluntary and nongovernmental. Yet today, many organizations utilize government funds of one kind or another in providing "charitable" services. In such instances, what really is "charity"? *See Symposium, What is Charity? Implications for Law and Policy,* 39 Case W Res 653 (1988-89).

The 1987 legislature responded to *Salem Non-Profit Housing, Inc.,* by enacting subsection (2) of ORS 307.130:

> "An institution shall not be deprived of an exemption under this section solely because its primary source of funding is from one or more governmental entities."

In enacting this law, did the legislature intend to equate government with charity? Can charity now be mandated by law, funded by taxes and received by right? Is any "nonprofit" activity charitable just because it obtains government funding?

It must be emphasized that the court's concern is with legislative intent, whatever it may be. In *House of Good Shepherd v. Dept. of Rev.,* 300 Or 340, 347, 710 P2d 778 (1985), the Oregon Supreme Court held that the advancement of religion is itself charitable.[5] The court did so not because that is its view, but because:

> "[I]t is apparent that earlier legislatures and courts did regard the advancement of religion, as understood by them, to be 'charitable' for its own sake, and we follow that interpretation of ORS 307.130 until the legislature indicates a different intention."

In this case, defendant acknowledges the worthy work of plaintiff. Nevertheless, defendant strongly maintains the line must now be drawn between what is truly charitable and what is not. During oral argument defendant asserted that 50 percent of the property in Oregon is now exempt from taxation. Each new exemption shifts a greater burden to other taxpayers.[6] However, it is not the duty of the court to protect the tax base. That is a legislative responsibility. The court's duty is to discern the intent of the legislature in enacting the statute.

■ The court finds that the legislature did not intend to eliminate giving from "charitable." The statute provides that an institution "shall not be deprived of an exemption solely because" of government funding. This does not imply that it shall be granted an exemption "solely because" of government funding. The kind of organization to which subsection (2) of ORS 307.130 refers is a "charitable" organization. That concept has long required the element of giving. *Methodist Homes, Inc. v. Tax Com.,* 226 Or 298, 360 P2d 293 (1961). In *YMCA v. Dept. of Rev.,* 308 Or 644, 784 P2d 1086 (1989), two fitness centers operated by the well-known nonprofit corporation were denied property tax exemption because the court found the required element of giving was absent.[7]

---

[5] This definition of charity raises serious questions. Are religions "charitable" which advocate or practice beliefs obviously not for the benefit of society such as war, genocide, anarchy or slavery?

[6] It seems likely that few properties would be subsidized if the legislature had to write a monthly check on the state coffers directly to the owners of those properties.

[7] It is true that the *YMCA* case did not involve government funding. Nevertheless, if the legislature intends to equate government funding of a project with "charity" it must say so more clearly than it has in ORS 307.130(2).

In this case, the court also finds the required element of giving is absent. Plaintiff contracts with the state to provide legal representation for indigent defendants. By contract, plaintiff becomes obligated to provide those services. Plaintiff receives quid pro quo payments for its services. The payments to plaintiff are approximately the same as those made to private attorneys for the same types of cases. The court finds that if there is any gift involved, it is not from plaintiff. Plaintiff has not shown any evidence that it would furnish legal representation to indigent defendants without payment from the state.

Exemption statutes are strictly construed.[8]

"Taxation is the rule and exemption from taxation is the exception. *Corporation of Sisters of Mercy v. Lane Co.,* 123 Or 144, 152, 261 P 694 (1927). The burden of establishing entitlement to an exemption is on the taxpayer claiming the exemption. *Methodist Homes, Inc. v. Tax Com.,* 226 Or 298, 307, 360 P2d 293 (1961)." *Dove Lewis Mem. Emer. Vet. Clinic v. Dept. of Rev.,* 301 Or 423, 426-27, 723 P2d 320 (1986).

Plaintiff has not shown that it comes within the requirements of ORS 307.130. The property in question is not used exclusively to perform charitable work. It is used to fulfill plaintiff's contractual obligation to the state. The court finds that defendant's Motion For Summary Judgment should be granted. Now, therefore,

IT IS ORDERED that plaintiff's Motion For Summary Judgment be, and hereby is, denied; and

---

[8] In *Parr v. Dept. of Revenue,* 276 Or 113, 117, 553 P2d 1051 (1976), the Supreme Court rejected the principle that in doubtful cases, tax statutes should be construed in favor of the taxpayer and against the state. The court stated:

"We conclude there should not be separate and different rules of statutory construction for ambiguous tax statutes than for other ambiguous statutes passed by the legislature."

However, the Oregon Supreme Court has since reaffirmed the narrower principle that:

"This court is committed to the rule that tax exemption statutes are to be construed strictly but reasonably. * * * Strict but reasonable means merely that the statute will be construed reasonably to ascertain the legislative intent, but in case of doubt will be construed against the taxpayer. *Eman. Luth. Char. Bd. v. Dept. of Rev.,* 263 Or 287, 291, 502 P2d 251 (1972)." *German Apost. Christ. Church v. Dept. of Rev.,* 279 Or 637, 640, 569 P2d 596 (1977).

IT IS FURTHER ORDERED that defendant's Motion For Summary Judgment be, and hereby is, granted.

Costs to neither party.