Argued and submitted January 23, the judgment of the tax court reversed
September 19, 1991

# SOUTHWESTERN OREGON PUBLIC DEFENDER SERVICES, INC.,
*Appellant,*

*v.*

# DEPARTMENT OF REVENUE,
*Respondent.*

## (OTC 2862; SC S37150)

817 P2d 1292

John W. Whitty, of Foss, Whitty, Littlefield & McDaniel, Coos Bay, argued the cause and filed the briefs for appellant.

Bonni C. Canary, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief was Dave Frohnmayer, Attorney General, Salem.

Before Gillette, Presiding Justice, and Van Hoomissen, Fadeley, Unis, and Graber, Justices.

GILLETTE, P. J.

## GILLETTE, P. J.

The issue in this tax case is whether taxpayer's personal property, which is used exclusively in connection with the defense of indigents accused of crimes, is exempt from personal property tax. The answer to that question turns on whether taxpayer is a charitable organization for the purposes of the Oregon tax laws. The answer to the latter question depends in turn on whether taxpayer satisfies the "gift or giving" element established by administrative regulation, as well as by prior decisions of this court. The Oregon Tax Court held that the "gift or giving" element was not present. *SW Oregon Pub. Def. Services v. Dept. of Rev.,* 11 OTR 339 (1990). Taxpayer appealed. We now determine that the "gift or giving" element is present and, accordingly, reverse the decision of the tax court.

The parties stipulated to the pertinent facts in the Oregon Tax Court, which decided the case on cross motions for summary judgment. Plaintiff, Southwestern Oregon Public Defenders Services, Inc. (taxpayer), is a nonprofit corporation whose sole activity is providing legal services to indigent clients, most of whom have been charged with crimes. Taxpayer's three-member board of trustees derives no monetary gain from the activities of the corporation. Taxpayer provides indigent defense services pursuant to a contract with the State Court Administrator. However, it is not a state agency and none of its employees are state employees. Its staff attorneys do not practice law outside of the public defenders' office. In addition to the services provided by taxpayer, the state also provides for counsel for indigent defense in Coos County from a consortium of private attorneys.

Other than minor amounts received for such items as use of its copy machine, taxpayer derives its funding solely from the state at the rate set forth in the services contract with the State Court Administrator. Taxpayer also receives some assistance from local college students who receive class credit for compensation. The indigent clients do not pay any fees to taxpayer but will, if able, repay the state for all or a portion of the costs for their court-appointed attorneys. Taxpayer receives no part of any such repayment. The service contract between taxpayer and the state prohibits taxpayer from using funds received under the contract for purposes

other than the indigent defense services specified in the contract.

Taxpayer owns personal property purchased with funds received under the service contract. All the property is used solely to perform services required in indigent defense. If taxpayer is dissolved or liquidated, the property must go to a qualifying charitable organization or a government entity.

Taxpayer sought an exemption from *ad valorem* taxes on its personal property for the 1987-88 tax year on the ground that it was a charitable institution. The Coos County tax assessor denied the exemption.[1] Taxpayer appealed to the defendant, Oregon Department of Revenue (the Department), which sustained the denial of the exemption. Taxpayer then appealed the Department's order to the Oregon Tax Court. As noted, the tax court also sustained the decision of the Coos County tax assessor. The present appeal followed.

Charitable institutions are exempted from property taxation by ORS 307.130, which provides:

"(1)   Upon compliance with ORS 307.162, the following property owned or being purchased by incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:

"(a)   Except as provided in ORS 748.414, only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions.

"* * * * *

"(2)   An institution shall not be deprived of an exemption under this section solely because its primary source of funding is from one or more governmental entities.

"(3)   An institution shall not be deprived of an exemption under this section because its purpose or the use of its property is not limited to relieving pain, alleviating disease or removing constraints."[2]

---

[1] Under ORS 307.162 and 311.207 to 311.213, the assessor is assigned responsibility for granting or denying the exemption claimed.

[2] Subsections (2) and (3) of ORS 307.130 apply to all assessment years beginning on or after January 1, 1980. Or Laws 1987, ch 391, § 2(4).

The Department adopted a regulation, OAR 150-307.130-(A), that established criteria to be used in determining qualification for an exemption under ORS 307.130. The regulation is extensive, but its provisions are central to the case. We therefore set out the pertinent portions of the regulation at some length:

"(1)  *Organization*

"* * * * *

"(b)  The corporation must be organized as a nonprofit corporation. * * * Thus, whether a corporation is a charity is to be determined not only from its charter, but also from the manner in which it conducts its activities;

"* * * * *

"(3)  *Purpose and Activity*

"(a)  Any organization claiming the benefit of property tax exemption under ORS 307.130, as a charitable institution, must have charity as its primary, if not sole, object and must be performing in a manner that furthers that object.

"(b)  The activity conducted by the charitable institution must be for the direct good or benefit of the public or community at large. * * *

"(c)  If the activity of the charitable institution relieves a government burden, it is an indicator that the institution may be charitable. Failure to relieve a government burden will not disqualify an organization as charitable.

"(d)  An element of gift or giving must be present in the organization's activities, relating to those it serves. This element of gift and giving is giving something of value to a recipient with no expectation of compensation or remuneration. Often, a charitable organization's product or service is delivered to recipients at no cost or at a price below the market price or price to the organization of the product or service. Declarations of worthwhile purpose and charitable endeavors must be manifested in concrete endeavors and tangible reality which benefits the recipient. Unless this element of a gift or giving is present promises of future worthy endeavors are meaningless by inaction, and give the applicant no preferred status.

"* * * * *

"(C)  The fact that an organization charges a fee for its services does not necessarily invalidate its claimed status as charitable. It is a factor to be considered in the context of the

organization's manner of operation. In determining whether a fee-charging operation is charitable, it is relevant to consider the following:

"(1)  Whether the receipts are applied to the upkeep, maintenance and equipment of the institution or are otherwise employed;

"(2)  Whether patients or patrons receive the same treatment irrespective of their ability to pay;

"(3)  Whether the doors are open to rich and poor alike and without discrimination as to race, color or creed;

"(4)  Whether charges are made to all and, if made, are lesser charges made to the poor or are any charges made to the indigent.

"* * * * *

"(E)  An institution shall not be denied exemption solely because:

"(1)  Its primary source of funding is from one or more government entities; or

"(2)  The purpose or use of the property is not limited to relieving pain, alleviating disease or removing constraints."

The Oregon Tax Court, in its opinion denying the exemption to taxpayer, stated: "Furnishing legal representation to the indigent falls within the narrow and traditional definition of charity. It is an act which 'removes constraint' on the poor." *SW Oregon Pub. Def. Services v. Dept. of Rev., supra,* 11 OTR at 342. The tax court nonetheless held that taxpayer failed to qualify for the exemption as a charitable organization because there was no element of "gift or giving" present:

"In this case, the court * * * finds the required element of giving is absent. [Taxpayer] contracts with the state to provide legal representation for indigent defendants. By contract, [taxpayer] becomes obligated to provide those services. [Taxpayer] receives quid pro quo payments for its services. * * * The court finds that if there is any gift involved, it is not from [taxpayer.] [Taxpayer] has not shown any evidence that it would furnish legal representation to indigent defendants without payment from the state.

"* * * * *

"[Taxpayer] has not shown that it comes within the requirements of ORS 307.130. The property in question is

not used exclusively to perform charitable work. It is used to fulfill [taxpayer's] contractual obligation to the state. * * *"

*Id.* at 344-45.

While the question joined by the opinion of the Oregon Tax Court and taxpayer's contentions may be phrased in several ways, it essentially is this: Is taxpayer "giving" its services, within the meaning of ORS 307.130 and the implementing regulation, OAR 150-307.130-(A)? Taxpayer argues that it is "giving," because an organization which receives all of its funding from the government is to be treated as if it were performing its functions with donated money. The test for "giving," in taxpayer's view, is not the *source* of the funds; it is the *use* of the funds. Taxpayer further claims that the fact that it relieves the state of the burden of performing indigent criminal defense is an indication of taxpayer's "giving."

The Department responds that, regardless of taxpayer's use of the funds, the fact that taxpayer has a contractual obligation to perform indigent defense services disqualifies taxpayer from an exemption. While the Department does not appear to question the idea that providing legal services to the indigent can be a charitable activity, it does contend that the services contract with the state creates in taxpayer an expectation of compensation or remuneration that prevents taxpayer's activities from qualifying as "giving" under either ORS 307.130 or OAR 150-307.130-(A). For the reasons that follow, we disagree with the Department.

We review the judgments of the Oregon Tax Court *de novo.* ORS 305.445; ORS 19.125(3). Our cases hold that "[t]axation is the rule and exemption from taxation is the exception." *Dove Lewis Mem. Emer. Vet. Clinic v. Dept. of Rev.,* 301 Or 423, 426, 723 P2d 320 (1986) ("*Dove Lewis*"); *accord Skyline Assembly of God v. Dept. of Rev.,* 274 Or 259, 263, 545 P2d 879 (1976); *Corporation of Sisters of Mercy v. Lane Co.,* 123 Or 144, 152, 261 P 694 (1927). "The burden of establishing entitlement to an exemption is on the taxpayer claiming the exemption." *Dove Lewis, supra,* 301 Or at 426-27. We construe exemption statutes strictly. *Skyline Assembly of God, supra,* 274 Or at 263; *Bd. Pub., Meth. Church v. Tax Com.,* 239 Or 65, 68, 396 P2d 212 (1964). The

rule of strict construction of tax exemptions, however, "does not foreclose the application of a reasonable construction in order to [achieve] * * * the legislative intent." *Mult. School of Bible v. Mult. Co.,* 218 Or 19, 27, 343 P2d 893 (1959).

ORS 307.130 states that certain "property owned * * * by incorporated * * * charitable * * * institutions shall be exempt from taxation[.]" The mere fact, however, that an organization is a charity does not establish any inherent right to an exemption. *Dove Lewis, supra,* 301 Or at 427. *Accord YMCA v. Dept. of Rev.,* 308 Or 644, 653, 784 P2d 1086 (1989); *Unander v. U.S. Nat'l Bank et al,* 224 Or 144, 151, 355 P2d 729 (1960); *Corporation of Sisters of Mercy v. Lane Co., supra,* 123 Or at 153. " 'Any organization claiming the benefit of the tax exemption statute as a "charitable" institution must have charity as its primary, if not sole, object, and must be performing in a manner that furthers that object.' " *YMCA v. Dept. of Rev., supra,* 308 Or at 653 (quoting *Dove Lewis, supra,* 301 Or at 427). "In determining whether an organization is, by its conduct, charitable, the crucial consideration is the element of a gift or giving." *Dove Lewis, supra,* 301 Or at 428.

Our cases, therefore, indicate that there are three elements to qualifying as a "charitable institution" under ORS 307.130: (1) the organization must have charity as its primary, if not sole, object; (2) the organization must be performing in a manner that furthers its charitable object; and (3) the organization's performance must involve a gift or giving. These requirements also are found in the regulation, OAR 150-307.130-(A). In this case, no party disputes that taxpayer meets the first two elements. The issue is whether taxpayer, as the public defender for Coos County, is involved in a gift or giving.

■■ Taxpayer contends that the fact that it is performing indigent criminal defense, a burden the state must bear under *Gideon v. Wainwright,* 372 US 335, 83 S Ct 792, 9 L Ed 2d 799 (1963) (a state must provide an attorney for those criminal defendants who are charged with a crime and facing a potential prison sentence), indicates that plaintiff is involved in "giving." OAR 150-307.130-(A)(3)(c) states that, "[i]f the activity of the charitable institution relieves a government burden, it is an indicator that the institution may be charitable." While

recognizing this same presumption in *Dove Lewis,* we explained that "one reasonable explanation for the government's decision to exempt charitable enterprises from the payment of taxes is that 'if such enterprises did not exist the government would be required to use tax dollars to do the job the charitable enterprises are now doing.'" *Dove Lewis, supra,* 301 Or at 431 (quoting *Friendsview Manor v. Tax Com.,* 247 Or 94, 105-06, 420 P2d 77, 427 P2d 417 (1967)). Under *Dove Lewis,* therefore, government must not only have the obligation to do what the taxpayer is doing, but the taxpayer also must relieve the government of some or all of the *financial* burden of performing the charitable service. In this case, the record does not establish that taxpayer is relieving the state of any financial burden.[3] The state is compensating taxpayer pursuant to the services contract. Thus, the state still incurs a financial burden for those indigent criminal defendants whom taxpayer represents. We therefore reject taxpayer's reliance on OAR 150-307.130-(A)(3)(c). Of course, the fact that taxpayer is not relieving the state of a financial burden does not disqualify it from an exemption, either. OAR 150-307.130-(A)(3)(c).

The pivotal issue in this case remains whether, as the Department argues and the tax court held, the existence of the *contract* with the state to perform indigent defense disqualifies taxpayer from an exemption under ORS 307.130. Inherent in the Department's argument that the service contract disqualifies taxpayer is a twofold premise to its view of a gift or giving: (1) If a taxpayer (the performer of charity) is contractually obligated to perform the charity, then the taxpayer is not "giving"; and (2) even if a taxpayer could be viewed as "giving" when performing a contractual obligation, it cannot be so if the promisor of the contract (the one who is paying the taxpayer) is a government.

■ We reject both assumptions. As to the latter, both the statute and the Department's regulation provide otherwise. ORS 307.130(2) states that "[a]n institution shall not be

---

[3] We read taxpayer's argument to be that, simply because it performs indigent criminal defense, it *per se* relieves the state of the financial burden of taxpayer's cases. Obviously, that at least overstates the case. The state *is* paying *something* for indigent representation. Neither are we free to hold in the alternative that, because taxpayer performs indigent defense at a cost lower than the state could purchase it elsewhere in Coos County, taxpayer relieves the state of a financial burden. However likely that may be, the stipulated facts do not contain any such indication.

deprived of an exemption under this section solely because its primary source of funding is from one or more government entities." If the Department is arguing that taxpayer should be denied an exemption because the state is the promisor on the service contract, ORS 307.130(2) specifically states that this is not a disqualifying criterion.

■     The Department's sole tenable ground for denying taxpayer an exemption is that, because taxpayer has a contractual obligation to perform indigent defense, taxpayer is performing its services with an "expectation of compensation or remuneration," OAR 150-307.130-(A)(3)(d), and is disqualified on that account. This brings us to a consideration of that rule and its scope.

The Department reads the rule as foreclosing an exemption to any taxpayer that expects to receive compensation or remuneration from any source. In other words, the Department construes the rule by viewing any alleged "giving" from the perspective of the taxpayer. This is incorrect. The appropriate perspective, we believe, is that of the recipient of the charitable giving. The Department's own regulation recognizes that. Besides containing the first two elements of "giving," OAR 150-307.130-(A) requires, among other things, that a taxpayer be a nonprofit corporation which separately accounts for funds committed to charitable use, while not operating for the profit or private advantage of the taxpayer's founders and officials. The regulation then states:

> "An element of gift and giving must be present in the organization's activities, *relating to those it serves.* This element of gift and giving is *giving something of value to a recipient* with no expectation of compensation or remuneration. Often, a charitable organization's product or service is delivered to recipients *at no cost* * * *. Declarations of worthwhile purpose and charitable endeavors must be manifested in concrete endeavors and tangible reality *which benefits the recipient.*"

OAR 150-307.130-(A)(3)(d) (emphasis supplied). That is, after a taxpayer has complied with all the requirements of the regulation up to subsection (3)(d), the question becomes, not whether taxpayer gains some kind of remuneration from some source, but whether, *so far as the recipient is concerned,* the taxpayer's

services are given to the recipients with strings attached. Subsection (3)(d)(C) confirms this interpretation:

> "The fact that an organization *charges a fee for its services* does not necessarily invalidate its claimed status as charitable. It is a factor to be considered in the context of the organization's manner of operation. *In determining whether a fee-charging operation is charitable, it is relevant to consider the following:*
>
> "\* \* \* \* \*
>
> "(2)   Whether *patients or patrons* receive the same treatment irrespective of *their* ability to pay;
>
> "(3)   Whether the doors are open to *rich and poor alike* and without discrimination as to race, color or creed;
>
> "(4)   Whether charges are made to all and, if made, are lesser charges made to the *poor* or are any charges made to the *indigent.*"

(Emphasis supplied.)

It is clear from a close reading of the regulation that paragraph (d) refers to "an expectation of compensation or remuneration" from the recipients of the charity — in this case, the indigent clients. Because taxpayer renders its services to its indigent clients without an expectation of compensation or remuneration from them, taxpayer satisfies OAR 150-307.130-(A)(3)(d).

Given that the regulation, in this case, only disqualifies charity done with an expectation of compensation or remuneration from the recipient of the charity, the question becomes whether plaintiff may qualify for an exemption if plaintiff had an expectation of compensation from a third party. Nothing in ORS 307.130 or the regulation prohibits this. Neither do we read our cases as prohibiting such an expectation in one seeking a charitable exemption.[4]

---

[4] OAR 150-307.130-(A) incorporates the holding of our cases interpreting the requirements of ORS 307.130. For example, in *Dove Lewis Mem. Emer. Vet. Clinic v. Dept. of Rev.,* 301 Or 423, 429, 723 P2d 320 (1986), this court stated that "the absence of two factors can negate any claim to exemption. The two factors are the existence of a separate account containing funds and donations committed to charitable use and the absence of profit or private advantage to the organization's founders and officials." OAR 150-307.130-(A)(1)(c) and (d) copy the language of *Dove Lewis*: "(c) The organization must separately account for funds and donations

The absence of such a restriction is not surprising. The very nature of a charity accepting donations or funding, private or public, presupposes that the donor desires, at least to some degree, that the charity use the donation to perform charitable service. While express contracts regarding the use of funding, as the service contract in this case, may not be typical, the existence of such a contract does not automatically change the eligibility of an organization as a "charitable institution" under ORS 307.130.[5] For example, a charity such as the Salvation Army would not lose its status if a major donor, instead of a lump sum contribution, used a voucher system whereby the Army was paid a certain amount per person for each day it gave aid to that person. The statute reflects this understanding when it provides that "[a]n institution shall not be deprived of an exemption under this section solely because its primary source of funding is from one or more governmental entities." ORS 307.130(2). It is difficult to imagine a device other than a contract by which a government would fund a private, charitable organization.

At bottom, the Department's argument hints of the "pre-existing duty" rule. This common law rule holds that doing "what one is already bound to do is not a consideration sufficient to support a contract." *Meyer v. Livesley,* 56 Or 383, 389, 107 P 476, 108 P 121 (1910). The rationale of this rule is that, where a party already obligated to perform is not giving up anything for the benefit it is gaining, the law will not hold the other party to its promise to give up something in return for that performance — to do so simply would not be fair. And this is the essence of the Department's argument: It is not fair for taxpayer to receive the benefit of an exemption under ORS 307.130 when taxpayer is only doing what it is contractually obligated to do.

---

committed to charitable use; [and] (d) The organization must not operate for the profit or private advantage of the organization's founders and officials[.]"

From a reading of our cases that interpret ORS 307.130, we conclude that none of our cases imposes further requirements for charitable institutions seeking an exemption beyond those listed in the current version of OAR 150-307.130-(A).

[5] The tax court stated that "[p]laintiff has not shown any evidence that it would furnish legal representation to indigent defendants without payment from the state." *SW Oregon Pub. Def. Services v. Dept. of Rev.,* 11 OTR 339, 345 (1990). This statement is irrelevant to this case. Neither the statute, nor the regulation, nor any of our cases, require this showing.

The issue in this case is not about fairness, however. Rather, it is about statutory requirements. For better or worse, the Legislative Assembly has chosen to allow an exemption to entities like taxpayer that meet the three elements of "charitable institution," regardless of whether the taxpayer performed the charity because of a contractual obligation. We cannot insert into ORS 307.130 what the Legislative Assembly has chosen to omit. ORS 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted").

We hold, therefore, that the fact that taxpayer contracts with the state to perform indigent defense in Coos County does not disqualify it from receiving an exemption under ORS 307.130. In this case, taxpayer has complied with all the statutory and rule requirements necessary to merit an exemption from taxation on its personal property. Although the Department's policy arguments have some appeal, they are more appropriately addressed to the Legislative Assembly as policy reasons for amending the exemption statute.

Taxpayer, in order to qualify for the exemption provided in ORS 307.130, needed only to comply with the current law. On the stipulated record before us, taxpayer has done so. Its request for a tax exemption should have been allowed.

The judgment of the tax court is reversed.